UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER MILLER,

                              Plaintiff,

        v.                                              3:10-cv-597

CITY OF ITHACA, et al.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff Christopher Miller commenced the instant action asserting that he was

discriminated against in connection with his employment on account of his race and gender

and that he was retaliated against for engaging in protected activity.  Miller asserts claims

pursuant to Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. §§ 1981 and

1983; the New York State Human Rights Law ("HRL"); and the New York State Constitution.

Presently before the Court are Defendants' motions pursuant to Fed. R. Civ. P. 12 seeking

dismissal of the Amended Complaint.

I.        BACKGROUND

        The following facts are taken from Plaintiff's Amended Complaint and, for purposes

of the instant motion, are deemed to be true.

        Plaintiff is a male Caucasion who, at all times relevant hereto, was an employee of

the City of Ithaca Police Department ("IPD").  Defendant Edward Vallely was the Chief of the

IPD.  Defendants John Barber and Pete Tyler were Deputy Chiefs of Police of the IPD.

Defendant Gwen Wilkinson was the District Attorney for the County of Tompkins, New York.

Plaintiff began working for the IPD as a police officer in September 2000.  Early on,

then Deputy Chiefs David Barnes and Glen Sharshon told Plaintiff he was "junior" to two

African-American officers because he was white.  In or about July 2008, the City of Ithaca

Human Resources Director stated that "[w]e want more black males."  It is generally claimed

that Tyler and others treat African-American and minority officers more favorably than white

officers and scrutinize white officers more closely.

In September and December 2005, Plaintiff filed complaints with the Tompkins

County Human Rights Commission and the New York State Division of Human Rights

("DHR") alleging race-based discrimination and reporting "acts of misconduct of IPD officers

including that of Defendant Tyler."  Am. Compl. at ¶ 25.  Thereafter, Tyler started making

disparaging statements about Plaintiff and his trustworthiness.

In January 2007, Plaintiff took the civil service examination to become a sergeant.

Plaintiff was one of the top three candidates for promotion.  Plaintiff was informed by then

Chief of Police Lauren Signer that he would not be promoted.  A lesser qualified African-

American was promoted.  Signer stated that the Mayor wanted her to promote African-

Americans.  Thereafter, the IPD promoted lesser qualified Hispanic officers who were not

among the top three candidates.  The IPD suspended its practice of interviewing candidates

for promotions when African-Americans and other minorities were available for promotion.

Plaintiff also claims that he was passed over for training opportunities in favor of African-

Americans with fewer qualifications and less seniority.

In May 2008, Plaintiff was involved in an off-duty motor vehicle accident.  Despite a New York State Police investigation finding no fault on Plaintiff's part, Barber insisted that Plaintiff be charged.

In or about July 2008, Plaintiff filed another complaint with the DHR alleging discrimination on account of his race and gender and retaliation "for his complaints of discrimination and reports of misconduct." Am. Compl. at ¶ 35.  In May 2009, Plaintiff was confronted by an African-American Police Officer, Christine Barksdale.  Barksdale "berated" Plaintiff over his complaints of discrimination and called him a liar, corrupt, filthy, and a pig.

On May 13, 2009, Plaintiff worked a DWI detail and completed a tracking sheet or log.  Plaintiff contends that these logs were scrutinized to further efforts to discriminate and retaliate against Plaintiff.[1]

On June 2009, Plaintiff was summoned to Valley's office and administratively charged with violations of IPD Rules and Regulations and the New York State Penal Law with respect to his entries on the tracking sheet.  Plaintiff was accused of being untruthful, falsifying business records and official misconduct.  Barber threatened Plaintiff that if he did not waive arbitration and accept his punishment, he would be terminated and indicted. Plaintiff signed the waiver.

In July 2009, Plaintiff filed a third charge of discrimination with the DHR "alleging discrimination on the basis of race and gender and continued retaliation for his complaints of discrimination and reports of retaliation and misconduct." Am. Compl. at ¶ 43.  A conference

---

[1] Conclusory allegations and legal conclusions need not be accepted as true in connection with a motion to dismiss.  Hayden v. Paterson, 594 F.3d 150, 157 n.4 (2d Cir. 2010); see also Ashcroft v. Iqbal, ---U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009).

concerning Plaintiff's charges of discrimination was held in July 2009.  Thereafter, Plaintiff's work assignments were changed and he was assigned to foot patrol almost exclusively.

In August 2009, Plaintiff took a leave of absence due to stress.  Defendants ordered Plaintiff to surrender his weapon and badge and other department equipment. Plaintiff was not permitted to return to work without being cleared by a psychiatrist.

In September 2009, "Vallely solicited and Defendant Wilkinson agreed to provide a sham 'opinion' concerning Plaintiff's credibility."  Id. at ¶ 46.  In October 2009, Wilkinson announced that multiple felony charges resulting from an arrest Plaintiff executed in a weapons and drug case would be (or should be) dismissed because of Plaintiff's internal discipline for inaccurate paperwork.  Defendants released Plaintiff's personal information in connection with an article concerning the dismissal of the weapons and drug case.

In December 2009, Plaintiff returned from his administrative leave.  Plaintiff was assigned indefinitely to desk work.  It is claimed that other officers were disciplined for paperwork inaccuracies and returned to their original assignments, whereas Plaintiff was kept on desk duty and monitored.  Plaintiff complained to the Union and the Ithaca Human Resources Director.  They refused to file a grievance or otherwise take action.  While on desk duty, Plaintiff was told that he could not read or use his personal computer, whereas other officers on desk duty were permitted to read or use their personal computers.

In May 2010, Plaintiff was accused of posting derogatory comments on a blog. Tyler stated that Plaintiff knew his discrimination complaints were a lie.[2]  Vallely told Plaintiff

---

[2] This statement loses some of its sting when coupled with the fact that, in September 2009 and, thereafter, in February 2010, the DHR and EEOC respectively dismissed Plaintiff's charge of discrimination as lacking probable cause to believe Defendant engaged in unlawful discriminatory practices.  Because the Amended Complaint references charges of discrimination filed with the DHR and
(continued...)

that "if you don't leave, I will find a way to get rid of you."  Plaintiff reported this to the Union. The Union representative told Plaintiff "there was no 'violation of our contract' and no grievance or other action would be taken. . . ."  Id. at ¶ 55.

Thereafter, in May 2010 Plaintiff commenced the instant litigation.  In June 2010, Plaintiff was summoned to Valley's office and served with a Notice of Discipline seeking his termination and administratively suspending him.  Plaintiff was ordered to surrender his badge, firearm, and department equipment.  Defendants retained a private investigator to investigate Plaintiff.

## II.     STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . .  a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65.  "Factual allegations must be enough to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965.  "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates

<hr>

[2](...continued)
the charges of discrimination and the agency's determination of the charges are matters of public records, the Court may take judicial notice of them and consider them in connection with the pending motions to dismiss.  See Muhammad v. New York City Transit Authority, 450 F. Supp.2d 198, 204-05 (E.D.N.Y. 2006).

a suspicion [of] a legally cognizable right of action.'" Id. at 1965 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement."  Ashcroft, 129 S. Ct. at 1949.  Legal conclusions must be supported by factual allegations.  Iqbal, at 1950.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. 557) (internal quotations omitted).

With this standard in the mind, the Court will address the pending motions to dismiss.

III.     DISCUSSION

        a.      **Motion by Jeffrey Huddle and the Ithaca Police Benevolent Association**

Defendant's Jeffrey Huddle and Ithaca Police Benevolent Association move to dismiss the claims against them.  Plaintiff notes that, in his Amended Complaint, he has dropped all claims against these Defendants.  Because these Defendants are no longer named in the Amended Complaint, their motion to dismiss is DENIED AS MOOT.

**b.** **Motion to Dismiss by the City of Ithaca, Edward Vallely, John Barber, and Pete Tyler**

**1.** **Employment Discrimination Under Title VII and 42 U.S.C. §§ 1981 and 1983**

To establish a claim of racial or gender discrimination under Title VII, 42 U.S.C. § 1981, or the New York State Human Rights Law, Plaintiff must show that: 1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); White v. Eastman Kodak Co., 368 Fed. Appx. 200, 202 n.1 (2d Cir. 2010); Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (§ 1983); Hudson v. Int'l Business Machines Corp., 620 F.2d 351, 354 (2d Cir. 1980) (§ 1981); Schiano v. Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006) (HRL).

"To state a claim for a hostile work environment . . . Plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive-that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race, gender, or in retaliation for engaging in protected activity]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (citations omitted). The Second Circuit recently explained that:

> In order to establish a hostile work environment claim . . ., a plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered.  A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive.  The

> plaintiff must show more than a few isolated incidents of racial enmity, although a
> hostile work environment can also be established through evidence of a single
> incident of harassment that is extraordinarily severe.

Fincher v. Depository Trust Clearing Corp., 604 F.3d 712, 723-24 (2d Cir. 2010) (internal

citations, quotations and alterations omitted).  Even if pervasive or severe, Plaintiff must

demonstrate that the conduct occurred because of his race, gender, or in retaliation for

engaging in protected activity.  See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).

### a. Gender-Based Discrimination

Defendants moves to dismiss all gender-based discrimination claims on the ground

that the Amended Complaint fails to allege sufficient facts to plausibly state such a claim.

While the Amended Complaint makes numerous passing references to, and conclusory

allegations concerning, discrimination on account of gender, it sets forth an insufficient

factual basis to plausibly assert a claim of gender-based discrimination.  The Amended

Complaint does not identify instances where Defendant was treated less favorably than

female employees.  The Amended Complaint similarly does not set forth any gender-based

conduct, stereotyping, or statements by Defendants that could plausibly give rise to an

inference that any actions taken against Plaintiff (including any hostile work environment)

were on account of Plaintiff's gender.  See generally Back v. Hastings on Hudson Union Free

Sch. Dist., 365 F.3d 107 (2d Cir. 2004).  When the Amended Complaint refers to Plaintiff's

gender, it usually does so when comparing a "White male officer" to "African-American and

minority officers."  See e.g., Am. Compl. at ¶¶ 24, 61, 62, 64, 74.  Considering the totality of

the Amended Complaint, these allegations pertain to Defendant's race-based claims; not his

gender-based claims.  There are insufficient facts alleged in the Amended Complaint

supporting the gender-based discrimination claim.  Accordingly, the gender-based discrimination claims are DISMISSED.

### b.  Race Based Discrimination/Hostile Work Environment

Defendants move to dismiss the race-based discrimination claims, including the claim of a hostile work environment.  In his Amended Complaint, Plaintiff asserts the following incidents of arguably disparate treatment: (1) not being selected for the sergeant position in 2007 in favor of a lesser qualified African-America; (2) two lesser qualified Hispanics being promoted over him; (3) being passed over for training opportunities in favor of lesser qualified African-Americans; (4) being charged in connection with an off duty motor vehicle accident; (5) being administratively charged with violations of IPD Rules and Regulations and the New York State Penal law concerning his entries on tracking sheets; (6) having to surrender his badge, firearm and other equipment upon taking an administrative leave of absence; (7) being placed on desk duty upon his return from the leave of absence; (8) being assigned to foot patrol; and (9) being served a Notice of Discipline administratively suspending him and seeking his termination in June 2010.[3]

The Amended Complaint also recites general claims that Defendants "repeatedly treat African-American and minority officers more favorably than White male officers in matters of discipline and evaluating performance," Am. Compl. at 24, that Defendants

---

[3] The remaining allegations (discussed *infra*), while arguably evidence of discrimination, do not constitute adverse employment actions.  See Terry v. Ashcroft, 336 F.3d 128, 138 ("An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.  Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.") (internal quotation, citations, and alterations omitted).

tolerate racist and derogatory comments about White male officers, but investigate and discipline While male officers who use such language, and that Defendants "more closely scrutinize the White officers. . . ." Id.  It is further alleged that, after Plaintiff complained of discrimination and misconduct of IPD officers, Tyler "began making disparaging statements about Plaintiff and his trustworthiness." Id. at 26.  Other factual assertions include Plaintiff being confronted by an African-American IPD officer in May 2009 concerning his complaints of discrimination, Plaintiff's tracking logs being "scrutinized," a statement in September 2009 concerning Plaintiff's credibility, the release of personal information in October 2009, not allowing Plaintiff to read or use his personal computer while on desk duty, being questioned about a blog in May 2010, and being told he should find another place to work or Defendants would find a way to get rid of him.

### (1) Failure to Promote/Failure to Train

Plaintiff contends that, in 2007, he was not selected for the sergeant position and that a lesser qualified African-American was.  He also alleges that he was passed over for an unspecified position in favor of lesser qualified Hispanics.  Plaintiff further states that he was denied training opportunities in favor of lesser qualified African-Americans.  These allegations plausibly establish a *prima facie* case of race-based discrimination.

Plaintiff failed to timely file a charge of discrimination within 300 days of the failure to promote to the sergeant position.  Ragonone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 126 (2d Cir. 2010); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).  Accordingly, the Title VII claim concerning the failure to promote to sergeant must be dismissed as untimely.  Plaintiff may pursue this claim under § 1981, which is subject to a

four year statute of limitations, <u>Jones v. R.R. Donnelley & Sons, Co.</u>, 124 S. Ct. 1836 (2004), and § 1983.

The failure to promote to sergeant claim is untimely under § 1983 and the HRL. Plaintiff was advised of the decision in January 2007, more than three years before commencing the instant action.  <u>Shomo v. City of New York</u>, 579 F.3d 176, 181 (2d Cir. 2009) (§ 1983); <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 907 (2d Cir. 1997) (HRL). Further, none of the individual Defendants can be liable under §§ 1981 or 1983 because Plaintiff does not allege any personal involvement by them.  <u>Back</u>, 365 F.3d at 122 (§ 1983); <u>Patterson v. County of Oneida, N.Y.</u>, 375 F.3d 206, 229 (2d Cir. 2004) (§ 1981).  The Amended Complaint alleges that then Chief of Police Lauren Signer "appointed an African American to the sergeant's position. . . ." and does not identify personal involvement by any other Defendant.  The City of Ithaca may, however, be liable for the failure to promote because Signer may have been a final policymaker.  <u>Patterson</u>, 375 F.3d at 226 (municipal liability under § 1981 requires proof that the challenged acts were performed pursuant to a municipal policy or custom); <u>Pisano v. Mancone</u>, 2009 WL 2337131, at *5 (S.D.N.Y. 2009) (finding it plausible that the chief of police of the village had final policymaking authority for employment-related decisions).

### (2)  Charges Filed in Connection With A Motor Vehicle Accident

With respect to Defendants filing charges against Plaintiff as a result of his off-duty motor vehicle accident, there are no allegations that this incident affected the terms and conditions of Plaintiff's employment.  Thus, this does not constitute an adverse employment

action.  Moreover, there is nothing about this incident plausibly suggesting that the decision to prosecute Plaintiff was on account of his race.

### (3) Administrative Charges for Violations of IPD Rules and Regulations and the New York State Penal Law/Desk Duty/Surrendering Department Equipment Upon His Administrative Leave/Foot Patrol/Notice of Discipline

Plaintiff alleges that he was charged with violating IPD Rules and Regulations and the New York State Penal Law concerning his entries on tracking sheets, had to surrender certain department equipment (including his badge and firearm) upon taking administrative leave, was placed on desk duty upon returning from his administrative leave of absence, was assigned to foot patrol, and was issued a Notice of Discipline on account of his race.  While these actions may constitute adverse employment actions, none of the factual allegations in the Amended Complaint reasonably suggest they were motivated, in whole or in part, by Plaintiff's race.

With respect to the tracking sheets, the Amended Complaint alleges that "other officers who have not complained of discrimination . . . did not have their logs scrutinized nor were they investigated."  Am. Compl. at ¶ 39.  These allegations arguably go to a claim of retaliation; not race-based discrimination.  According to the Amended Complaint, the requirement that Plaintiff surrender his badge and firearm was related to Plaintiff's leave of absence "due to . . . stress."  It is not unreasonable for a police department to conclude that a police officer who is unable to work due to mental stress should not be empowered to make arrests (thereby justifying the turning in of the badge) or carry a firearm (thereby justifying the turning in of his weapon), or that he should not return to work until cleared by a mental health professional.  In any event, there are insufficient plausible actions suggesting

that the decision in this regard was on account of Plaintiff's race.  Similarly, with respect to Defendants' decision to place Plaintiff on desk duty upon his return to work from his leave of absence, the Amended Complaint alleges that "numerous other officers were disciplined for paperwork inaccuracies and returned to their original assignments" and that "Defendant Chiefs arranged the desk duty assignment as a retaliatory [move]."  Am. Compl. at ¶ 50. This may suggest retaliation, but is not indicative of race-based discrimination.  The Amended Complaint specifically states that Plaintiff was placed on foot patrol "[i]mmediately" after a conference concerning his charge of discrimination filed with the Tompkins County Human Rights Commission.  Again, this may suggest retaliation, but not race-based discrimination.  Finally, and for similar reasons, nothing about the issuance of the Notice of Discipline plausibly suggests a race-based motive.

Accordingly, all claims concerning discrete incidents are dismissed except for the failure to promote and failure to train claims.

### (4) Hostile Work Environment

Turning to the first and third elements of a hostile work environment claim set forth above, the Court finds that the Amended Complaint fails to allege sufficient facts to plausibly assert that there was pervasive or hostile conduct on account of Plaintiff's race.  The Amended Complaint alleges that Defendants "repeatedly treat African-American and minority officers more favorably than White male officers in matters of discipline and evaluating performance" and that male Caucasian officers are more closely scrutinized directly pertains to race.  While these allegations are race-related and Plaintiff need not present a list of specific facts, see Brennan v. Metropolitcan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir.

1999), these allegations are conclusory.[4]  They do not specify sufficient facts upon which

they are based to render the conclusion plausible.  Id. ("[A] plaintiff must still prove that the

incidents were sufficiently continuous and concerted to be considered pervasive.") (quotation

and citation omitted).  Stating that the treatment was "repeated" or "continuous" does little

more than track the elements of a hostile work environment claim.  The Amended Complaint

gives no indication of the nature, frequency, or severity of any such discipline, evaluation,

scrutiny, or other treatment, or whether it unreasonably interfered with Plaintiff's work

performance. See Leung v. New York University, 2010 WL 1372541, at * 7 (S.D.N.Y. 2010);

Weston v. Optima Communication Systems, Inc., 2009 WL 3200653, at *3 (S.D.N.Y. 2009).

        Moreover, with the exception of the failure to promote and failure to train claims

(see discussion supra), there are insufficient factual allegations in the Amended Complaint to

plausibly conclude that the incidents comprising the alleged hostile work environment were

on account of Plaintiff's race.  See Pucino v. Verizon Wireless Communications, Inc., — F.3d

—, —, 2010 WL 3191433 (2d Cir. 2010).  The Amended Complaint directly connects the

allegation that Tyler began making disparaging remarks concerning Plaintiff's veracity to the

filing of a complaint of discrimination, which included a report of misconduct by Tyler.  This

suggests a potential retaliatory motive; not a race-based motive.  The confrontation by

Officer Barksdale appears to have been an isolated incident by a non-Defendant co-worker

and was also related to Plaintiff's complaints of discrimination.  There is no indication

Barksdale acted on account of Plaintiff's race.  The claimed release of Plaintiff's personnel

---

[4] See Black's Law Dictionary 308 (8th ed. 2004) (defining conclusory as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based."); see www.merriam-webster.com (defining conclusory as "consisting of or relating to a conclusion or assertion for which no supporting evidence is offered.").

information, placing Plaintiff on desk duty upon his return to work, and refusing to allow Plaintiff to read or use a personal computer while on desk duty similarly lack any factual basis to render plausible the allegation that these actions were on account of Plaintiff's race. The Amended Complaint specifically contends that "numerous other officers were disciplined for paperwork inaccuracies and returned to their original assignments [rather than kept on desk duty]."  Am. Compl. at ¶ 50.  No distinction is made among Caucasion and other officers.  Similarly, the Amended Complaint alleges that "others assigned to the desk were . . . allowed to read and bring in their personal computers."  Id. at ¶ 52.  Again, the Amended Complaint does not allege a race-based distinction.  Defendants' questioning of Plaintiff concerning postings on a blog, telling Plaintiff that he should find another job or that they would find a way to get rid of him, and being served with a notice of discipline suspending him and seeking to terminate his employment may be evidence of personal animus or some other motive, but, without more, they are not suggestive of a race-based motive.

Simply stated, while Plaintiff asserts facts suggesting that he may have suffered various unpleasant incidents at the workplace, considering the allegations individually and in their totality, the factual allegations of the Amended Complaint do not plausibly suggest sufficient severity, pervasiveness, or a race-based motive.  The pleaded facts "do not permit the court to infer more than the mere possibility of misconduct."  Iqbal, at 1950.  Accordingly, the hostile work environment claims are DISMISSED.

### (5) Retaliation

Defendants move to dismiss Plaintiff's retaliation claims.  To establish a claim for retaliation, Plaintiff must demonstrate that: (1) he engaged in protected activity, (2) the employer was aware of this activity, (3) the employer took adverse action against the plaintiff,

and (4) a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. See Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).

Here, Plaintiff alleges numerous instances of protected activity of which Defendants were aware: (1) filing complaints of discrimination in or about September and December 2005; (2) filing a complaint of discrimination in or about July 2008; (3) filing a charge of discrimination in or about July 2009; (4) complaining of retaliatory conduct to the Ithaca Human Resources Director, Am. Compl. at ¶ 51; and (5) the filing of the instant lawsuit in May 2010.

### (a) 2005 Complaints of Discrimination

Plaintiff filed charges of discrimination in late 2005. Plaintiff alleges that, thereafter, Tyler began making disparaging statements about Plaintiff. As previously noted, the Amended Complaint does not allege the nature, severity, or frequency of any such statements by Tyler, or whether it unreasonably interfered with Plaintiff's work performance. It, therefore, cannot be said that the Amended Complaint alleges sufficient facts to plausibly suggest an adverse employment action or a retaliatory motive. There are no other purported adverse employment actions until the 2007 failure to promote. Actions in 2007 and after are too remote in time from 2005 to permit an inference of discrimination. Clark County Sch. Dist. v. Breeden, 121 S. Ct. 1508, 1511 (2001) (noting that, to establish sufficient evidence of causality, the temporal proximity between an employer's knowledge of protected activity and an adverse employment action must be "very close" and stating that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all.").

### (b) July/August 2008 Complaint of Discrimination

Plaintiff also filed a complaint of discrimination in July/August 2008.  Thereafter, Barksdale "confronted" Plaintiff concerning his complains of discrimination and called him various names.  In May 2009, Defendants started looking into Plaintiff's tracking logs.  Once again, even assuming these incidents constitute adverse employment action, the length of time between the July/August 2008 charge of discrimination and any conduct in May 2009 or after is too remote to permit an inference of discrimination.  Id.

### (c) July 2009 Complaint of Discrimination

Plaintiff filed a complaint of discrimination in July 2009.  The Amended Complaint alleges that "[i]mmediately thereafter, Plaintiff's work assignments were changed for the worse and Plaintiff was assigned to work foot patrol almost exclusively."  The change in work assignment to foot patrol may constitute an adverse employment action.  Further, the alleged proximity in time between the July complaint and Plaintiff's being placed on foot patrol could supply the necessary causal relationship.[5]

### (d) Complaint to the Human Resources Director/May 2010 Filing of the Instant Lawsuit

The Amended Complaint alleges that Plaintiff "complained of . . . retaliatory conduct to his Union and the Ithaca Human Resources Director."  Although the Amended Complaint does not specifically allege when these complaints were made, it appears that the factual allegations of the Amended Complaint are arranged in chronological order.  If so, that would suggest that Plaintiff complained to the Human Resources Director some time

---

[5] It is unclear which Defendants, if any, were involved in the decision to place Plaintiff on foot patrol.  Accordingly, the Court cannot now determine whether a particular individual defendant was personally involved in the action and, therefore, liable under §§ 1983 or 1981.

between late December 2009 and mid May 2010.  In May 2010, Plaintiff filed the instant action.  The next day, Defendant's served Plaintiff with a Notice of Discipline imposing an administrative suspension and seeking to terminate Plaintiff's employment.  This constitutes an adverse employment action.  The temporal proximity between the complaint to the human resources director and the filing of the instant litigation to Plaintiff's being served with a Notice of Discipline is sufficient to plausibly support a finding of causation.[6]

### 2.    Official Capacity Claims

Defendants contend that the claims against Vallely, Barber and Tyler in their official capacities are redundant to the claims against the City of Ithaca and, therefore, should be dismissed.  "Claims against individual defendants in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant."  Zachary v.Clinton County, N.Y., 2003 WL 24197685 at *2 (N.D.N.Y. Jan.10, 2003).  Because the City of Ithaca is a named Defendant, the official capacity claims against Vallely, Barber and Tyler are dismissed.

---

[6] Defendants contend that: (1) they were not aware of the litigation at the time they decided to serve the Notice of Discipline; and (2) they have a legitimate, non-retaliatory reasons for the Notice of Discipline.  To entertain these allegations would require referring to materials outside the pleadings. Although Defendants request that the Court do so, it declines the invitation because: (1) it is early in the litigation with little or no discovery on the issue; and (2) piecemeal summary judgment motions are disfavored.  See Siemens Westinghouse Power Corp. v. Dick Corp., 219 F.R.D. 552, 554 (S.D.N.Y. 2004); Brushini v. Bd. of Educ. of Arlington Cent. Sch. Dist., 911 F. Supp. 104, 107 (S.D.N.Y. 1994); Tilcon Minerals, Inc. v. Orange and Rockland Utilities, Inc., 851 F. Supp. 529, 531 (S.D.N.Y. 1994) ("A series of piecemeal motions for summary judgments would waste resources of both the parties and the court, contrary to the objectives of Fed. R. Civ. P. 1.").  Given the particularly litigious nature of this case, the Court has little doubt that summary judgment motions will be filed in connection with the remaining claims.  Defendants also argue that this claim should be dismissed because it is the subject of arbitration.  It is unclear at this time whether the arbitration encompasses the claims asserted in this case.  If Defendants believe certain matters to be subject to arbitration, they may file an appropriate motion under the Federal Arbitration Act.  Accordingly, the Court declines to dismiss on that ground at this time.

### 3.    First Amendment

Defendants move to dismiss Plaintiff's First Amendment claim on the ground that he did not speak on a matter of public concern.  The speech at issue here is comprised of Plaintiff's charges of discrimination filed with various agencies, his complaint to the Union and the Ithaca Human Resources Director, and his reporting "numerous acts of misconduct of IPD officers."  According to the Amended Complaint, Plaintiff's charges of discrimination were filed with various human rights agencies and concerned his allegations of discrimination, and retaliation for his complaints of discrimination and reports of retaliation and misconduct.

A public employee who makes a First Amendment claim of employment retaliation pursuant to §1983 must show that: (1) the plaintiff engaged in protected speech; (2) he suffered an adverse employment decision, and (3) there is a causal connection between her speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment action.  See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); Cioffi v. Averill Park Central School Dist. Board of Ed., 444 F.3d 158, 162 (2d Cir. 2006).

A public employee's speech may be constitutionally protected only if the plaintiff has spoken out as a citizen, not as an employee, on matters of public concern, rather than on matters of personal interest, and the state lacks an adequate justification for treating the employee differently from any other member of the general public.  See Garcetti, 547 U.S. 410; Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); Cotarelo v. Sleepy Hollow Police Dept., 460 F.3d 247, 252 (2d Cir. 2006); Grillo v. New York City Transit Authority, 291 F.3d 231, 235 (2d Cir. 2002); Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  "Whether an

employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record."  Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999).  "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech' . . . ."  Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (quoting Garcetti, 547 U.S. at 418).  "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'"  Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir. 2008) (quoting Lewis v. Cowen, 165 F.3d 154, 63-64 (2d Cir. 1999)).

Here, the charges of discrimination filed in 2005 occurred more than three years prior to the filing of the Complaint and, therefore, are time barred.  Assuming those charges to be of matters of public concern and to be timely, for the reasons discussed *supra* in connection with the retaliation claims, the Amended Complaint pleads insufficient facts to plausibly suggest an adverse action or chilling of speech causally related to the protected speech.

The July/August 2008 and July 2009 charges of discrimination concern personnel matters personal to Plaintiff and, therefore, do not constitute protected speech.  In those charges, Plaintiff alleged "discrimination on the basis of race and gender and retaliation for his complaints of discrimination and reports of misconduct."  Am. Compl. at ¶¶ 35, 43.  Plaintiff complained of what he perceived to be discrimination against him on account of race and gender and retaliation for having engaged in protected conduct.  See Ayoub v. Texas A&M Univ., 927 F.2d 834, 837 (5th Cir. 1991).  There is no indication that Plaintiff sought to

- 20 -

debate or bring to public light issues of discrimination and retaliation at the IPD in general. See Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993).  Rather, Plaintiff's complaints sought redress of personal grievances.  The factual allegations in the Amended Complaint do not suggest complaints of system-wide discrimination that implicate matters of public concern.  There are insufficient allegations to plausibly bring Plaintiff's speech outside the realm of personal employment-related grievances.

Lastly, Plaintiff filed the instant litigation in May 2010.  The filing of litigation alone does not automatically constitute protected speech.  See Ruotolo, 514 F.3d at 189.  Rather, the basis for the lawsuit must implicate matters of public concern.  "A public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run."  Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007) (quoted with approval in Ruotolo, 514 F.3d at 190).  As discussed, the Amended Complaint addresses issues concerning Plaintiff's employment situation.  See Am. Compl. at ¶ 60.  Although there are passing references to Defendants' treatment of "male Caucasian employees," they are couched in general, conclusory terms.  The Amended Complaint identifies no incidents concerning male Caucasian employees other than himself. See e.g. id. at ¶¶ 64-65.  Nearly all the relief sought is personal to Plaintiff.  Reviewing the Amended Complaint as a whole, Plaintiff is not on a mission to inform the public of, or redress, problems within the IPD, but, rather, to seek a remedy for what he perceives to be wrongs to him personally.  Ruotolo, 514 F.3d at 190; see also Tiltti v. Weise, 155 F.3d 596, 603 (2d Cir. 1998).

This case is unlike Cotarelo v. Village of Sleepy Hollow Police Dept., 460 F.3d 247 (2d Cir. 2006), where the underlying conduct involved complaints by police officers

concerning "the growing trend in the [Police Department] regarding bigotry and discrimination towards the Spanish-speaking police officers" and which cited specific examples of discrimination against various different Spanish-speaking officers.  Similarly, in <u>Konits v. Valley Stream Centr. High Sch. Dist.</u>, 394 F.3d 121, 126 (2d Cir. 2005), the lawsuit at issue was "predicated on speech about gender discrimination against a fellow employee."  Here, by contrast, Plaintiff does not identify, or complain of, specific instances of discrimination or retaliation suffered by anyone other than himself.  The use of broad compositional brush strokes cannot turn matters of a personal grievance into matters of public concern.

### 4.    Due Process

Defendants also seek dismissal of the Due Process claims.  The Amended Complaint alleges that Defendants' actions deprived him of his property interest in continued employment with the City of Ithaca and in his good name and reputation.

"[D]amage to reputation alone is insufficient to establish a claim for harm to a liberty interest."  <u>Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities</u>, 64 F.3d 810, 817 (2d Cir. 1995).  "[A] cognizable claim will lie if a plaintiff can show loss of reputation plus some serious additional harm, such as loss of employment, as a result of defamatory remarks by a government official."  <u>Id</u>.  "Generally, due process requires that a state afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest."  <u>DiBlasio v. Novello</u>, 344 F.3d 292, 302 (2d Cir. 2003).

Here, Plaintiff's employment has not been terminated.  Assuming the Notice of Discipline is enough to implicate his liberty or property interests, the Notice of Discipline served upon Plaintiff specifically advised him of the charges against him and afforded him the opportunity to seek arbitration, along with the right to representation by the Union.  This

name-clearing hearing (the arbitration) affords Plaintiff all the process that is due.[7]  Id. at 818 ("The deferred arbitration hearing would have afforded . . . that opportunity [for a name-clearing hearing].").  If, for some reasons, Defendants prevent Plaintiff from pursuing arbitration, then he may have a claim.  As it stands, Plaintiff does not have a ripe stigma-plus claim.

To the extent Plaintiff alleges a substantive due process violation, any such claims must be DISMISSED because: (1) other provisions of the Constitution provide a textual source against the complained of government behavior (e.g. First and Fourteenth Amendments), see Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection, 130 S. Ct. 2592, 2606 (2010); and (2) the conduct alleged in the Amended Complaint does not rise to the level of conscience shocking.  See County of Sacramento v. Lewis, 118 S. Ct. 1708, 1717-18 (1998).  Accordingly, the due process claims must be DISMISSED.

### 5.    Personal Involvement

Defendants contend that the Complaint fails to adequately allege personal involvement sufficient to impose liability on the individual Defendants.  As previously noted, the Complaint fails in this regard with respect to the claim concerning the failure to promote in 2007.  Notwithstanding Plaintiff's conclusory allegations that various Defendant "personally participated in the discriminatory/retaliatory acts alleged herein," Am. Compl. at ¶ 13,[8] the

---

[7] Because the Amended Complaint relies upon the Notice of Discipline, the Court has considered it in connection with the pending motions to dismiss.

[8] The Court cannot accept as true allegations that are flatly contradicted by other portions of the Amended Complaint.  For example, Plaintiff alleges that "at all times relevant to this Complaint" Defendant Vallely was the Chief of Police and "personally participated in the . . . acts alleged herein."

(continued...)

Amended Complaint fails to specify who was personally involved in various of the complained of conduct.  For example, there is no allegation as to who was responsible for promoting lesser-qualified Hispanics over Plaintiff.  The reasonable inference from the Amended Complaint is that the promotion of Hispanics over Plaintiff transpired in or about the same time as the 2007 failure to promote, which did not involve the named individual Defendants.  Accordingly, any claims relating to the failure to promote must be dismissed as against the individual Defendants.

Although the Complaint does not specify who was involved in the decision to place Plaintiff on foot patrol or to issue the Notice of Discipline, it is reasonable to infer that Defendants, who were Plaintiff's supervisors at that time, were involved in such decisions.  Accordingly, the retaliation claims concerning these incidents will not be dismissed against the individual Defendants.

### 6.      Whether the § 1983 Claims are Precluded by the Title VII Claims

Defendants move to dismiss the § 1983 claims on the ground that they are duplicative of the Title VII claims.  "A plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant, but a plaintiff can assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied."  Saulpaugh, 4 F.3d at 143.  Here, Plaintiff claims violations of his rights under the First Amendment and the Equal Protection clause.

---

[8](...continued)
Later on, however, the Amended Complaint alleges discriminatory conduct in 2007 by "then Chief of Police Lauren Signer. . . ."  Similar inconsistencies exist concerning the other individual Defendants.

For reasons previously discussed, Plaintiff has failed to state a claim under the First Amendment.  The claims of failure to train and/or failure to promote on account of race, however, can support an equal protection violation.  Cf. Saulpaugh, 4 F.3d at 144 ("sexual harassment of women constitutes disparate treatment because of gender, and is actionable under Section 1983.").  Accordingly, Plaintiff may maintain his § 1983 claim under the Fourteenth Amendment.

### 7.    Qualified Immunity

The individual Defendants claim entitlement to qualified immunity.  It is well-settled that it is unlawful to refuse to promote someone on account of their race or to retaliate against them for engaging in protected conduct.  See Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996); Ragin v. Newburgh Enlarged City School Dist., 2009 WL 4906111, at * 12 (S.D.N.Y. 2009); Jamison v. Chapman, 2009 WL 3762348, at *16 (N.D.N.Y. 2009).  Whether Defendants acted with discriminatory intent or their actions were based on what they reasonably perceived to be legitimate, non-discriminatory reasons is a factual issue that cannot be resolved at this time.

### 8.    Breach of Contract

Defendants move to dismiss the breach of contract claim on the grounds that: (1) there is no contract with Plaintiff, but, rather, a collective bargaining agreement ("CBA"); and (2) accordingly, any breach of contract claim is precluded by § 301 of the Labor Management Relations Act.  Although the Amended Complaint does not specifically reference a CBA, it does make several references to the Union, see e.g. Am. Compl. at ¶¶ 42, 51, 55, "the Union contract," id. at ¶ 51, the "contract in effect entered into by the City of Ithaca with its

employees," id. at ¶ 104, and the need to file grievances with the Union, id.   It is, thus,

reasonable to conclude that any contract is, indeed, a collective bargaining agreement.

> Under section 301 of the LMRA,
>
> > Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The Supreme Court has held that "a suit . . . alleging a violation of a provision of a labor

contract must be brought under § 301 and be resolved by reference to federal law.  A state

rule that purports to define the meaning or scope of a term in a contract suite therefore is

pre-empted by federal labor law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985).

"[Q]uestions relating to what the parties to a labor agreement agreed, and what legal

consequences were intended to flow from breaches of that agreement, must be resolved by

reference to uniform federal law, whether such questions arise in the context of a suit for

breach of contract or in a suit alleging liability in tort." Id. at 211.  State rules independent of

a labor contract are not pre-empted. Id. at 212.

> Here, Plaintiff alleges that the contract requires "good faith and fair dealing," bars

the imposition of discipline "without just cause" and compels the employer to provide various

forms of due process.  These allegations directly relate to the terms of the collective

bargaining agreement and, therefore, are pre-empted.  Plaintiff cites to New York Civ. Serv.

Law § 75 as a source of an independent state rule prohibiting discipline without a proper

basis.  The rights in § 75, however, may be surrendered in collective bargaining.  New York

City Transit Auth. v. New York State Public Employment Relations Board, 8 N.Y.3d 226, 234

(2008); Police Benevolenet Ass'n of New York State Troopers, Inc. v. Division of New York

State Police, 11 N.Y.3d 96, 103 ("statutory and due process rights may even be surrendered

during collective bargaining."); Patel v. New York City Housing Auth., 26 A.D.3d 172, 174 (1st

Dep't 2006) ("Rights under Civil Service Law § 75 may be supplement, modified or replaced

by the terms of a collective bargaining agreement."); Grippo v. Martin, 257 A.D.2d 952, 953

(3d Dept. 1999) ("an employee may, pursuant to the provisions of a collective bargaining

agreement, waive his or her rights pursuant to Civil Service Law §§ 75 and 76.").

Under the terms of the CBA,[9] Plaintiff waived those rights.  See Wagner Decl. at

Ex. 1, Art. XIII, Section K ("The parties fully and completely waive whatever rights they may

have had under Civil Service Law § 75. . . .").  Accordingly, there is no independent state rule

that would support a breach of contract claim.  Further, the Amended Complaint fails to

plausibly suggest a breach of a duty by the Union that would permit his to avoid pre-emption.

Del Costello v. Int'l Bd. of Teamsters, 462 U.S. 151, 164-65 (1983).  The factual allegations

of the Amended Complaint do not plausibly suggest that the Union acted in a discriminatory,

dishonest, arbitrary or perfunctory fashion.  Id.  To the contrary, the Amended Complaint

alleges that the Union attempted to negotiate a favorable resolution to the charges

concerning the tracking sheets. Am. Compl. at ¶ 42.  The Union refused to file certain other

grievances because it did not believe the complained of conduct to be a violation of the CBA.

---

[9] Because the Amended Complaint references and relies upon the CBA, see Am. Compl. at ¶¶ 104, 105, the Court may consider it in connection with the pending motions to dismiss.  See Chapman v. New York State Div. for Youth, 546 F.3d 230, 234 (2d Cir. 2008) (noting that review on a motion to dismiss is limited to undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint); Broder v. Cablevision Systems Corp., 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has relied on the terms and effect of a document in drafting the complaint, and that document is thus integral to the complaint, we may consider its contents even if it is not formally incorporated by reference.") (internal quotations, citation and alterations omitted).

<u>Id</u>. at ¶ 55.  Nothing about this decision suggests an improper motive by the Union.

Accordingly, the breach of contract claim must be DISMISSED.

### 9.      Plaintiff's Remaining Claims

Defendants seek dismissal of the Amended Complaint in its entirety.  With respect

to any remaining causes of action not previously discussed, Defendants fail to articulate a

basis for dismissal.  Accordingly, the motion is DENIED in this regard.

### c.      Defendants County of Tompkins and Gwen Wilkinson's Motion to Dismiss

### 1.      Title VII

Defendant Tompkins County and Gwen Wilkinson move to dismiss the Title VII

claims on the ground that there is no individual liability and they were not Plaintiff's employer.

In his responsive memorandum of law, Plaintiff appears to concede that he cannot pursue

any Title VII claims against these Defendants because there is no individual liability (thereby

precluding any claims against Gwen Wilkinson) and Plaintiff was not employed by Tompkins

County (thereby precluding any claims against Tompkins County).   Accordingly, the Title VII

claims are DISMISSED as to these two Defendants.

### 2.      All other Claims

All other claims against these Defendants must be dismissed.  Plaintiff has no

contract with these Defendants and, therefore, he cannot assert a breach of contract claim

against them.[10]  The Amended Complaint pleads insufficient facts to suggest that Wilkinson's

actions were motivated by Plaintiff's gender or race.  The retaliation claims must be

---

[10] In his brief in opposition to the motion to dismiss, Plaintiff claims that he is not asserting a breach of contract claim against the County or Wilkinson.

dismissed because, in addition to the reasons set forth above, there is no allegation that Wilkinson (a county employee) was aware of any protected activity (complaints of discrimination against the City of Ithaca).  The conclusory allegations that Wilkinson agreed to work with Vallely against Plaintiff, that Wilkinson was attempting to further the unlawful objectives of the City Defendants, or that "Defendants engaged in a meeting of the minds to subject the Plaintiff to the aforesaid wrongs" are conclusory and insufficient to plausibly allege any conspiracy to deprive Plaintiff of his rights or to suggest that Wilkinson aided or abetted any violation of Plaintiff's rights.  Riles v. Bannish, 2010 WL 3169391, at *3 (D. Conn. 2010); Morpurgo v. Incorporated Village of Sag Harbor, 697 F.Supp.2d 309, 331 (E.D.N.Y. 2010) .  Further, the Amended Complaint fails to plausibly explain how Wilkinson had the authority to "strip[] Plaintiff of his regular duties as a police officer and assign[] him . . . to work desk duty. . . ."  Am. Compl. at ¶ 49.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART as follows:

   a.  all claims against the County of Tompkins are DISMISSED;

   b.  all claims against Gwen Wilkinson are DISMISSED;

   c.  all claims alleging discrimination on account of gender are DISMISSED;

   d.  all claims concerning a hostile work environment are DISMISSED;

   e.  all claims alleging a violation of the First Amendment are DISMISSED;

   f.  all claims alleging a violation of Due Process are DISMISSED;

   g.  all claims alleging a breach of contract are DISMISSED;

h.      all claims of retaliation under Title VII, § 1983, § 1981, and the HRL are
        DISMISSED EXCEPT for claims relating to:

        1.      the July 2009 Charge of Discrimination;

        2.      the complaint to the Human Resources Director; and

        3.      the filing of the instant lawsuit.

i.      all claims of disparate treatment under Title VII are DISMISSED except for
        the failure to train;

j.      all claims of disparate treatment under § 1983 and the HRL are
        DISMISSED EXCEPT for the claims concerning the promotion of Hispanic
        employees and the failure to train;

k.      all claims of disparate treatment under § 1981 are DISMISSED EXCEPT
        for the claims concerning:

        1.      the promotion of African-American employees;

        2.      the failure to train; and

        3.      the promotion of Hispanic employees.

l.      All claims against Jeffrey Huddle and the Ithaca Police Benevolent
        Association, Inc. are DISMISSED.

m.      all claims against the individual Defendants in their official capacities are
        DISMISSED.

n.      all claims concerning the failure to promote are DISMISSED AS TO THE
        INDIVIDUAL DEFENDANTS.

In all other respects, the City Defendants' motion is DENIED.

IT IS SO ORDERED.

Dated:   September 22, 2010

Thomas J. McAvoy
Senior, U.S. District Judge