1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF NEW YORK

3

4   CHRISTOPHER MILLER,              )
                                     )
5                                    )
            Plaintiff,               )      CASE NO.3:10-CV-597
6                                    )
        vs.                          )
7                                    )
    CITY OF ITHACA, et al.,          )
8                                    )
                                     )
9            Defendants.             )
                                     )
10   _____ )

11            **TRANSCRIPT OF PROCEEDINGS**
       **BEFORE THE HONORABLE GARY L. SHARPE**
12          **FRIDAY, JANUARY 23, 2015**
              **ALBANY, NEW YORK**

13

14   **FOR THE PLAINTIFF:**
          Bosman Law office
15        By:  AJ Bosman, Esq.
          6599 Martin Street
16        Rome, New York  13440

17

18   **FOR THE DEFENDANTS:**
          Stokes, Wagner Law Firm
19        By:  Paul E. Wagner, Esq., Anne-Marie Mizel, Esq., and
               Hayden R. Pace, Esq.
20        903 Hanshaw Road
          Ithaca, New York  14850

21

22

23

24        **THERESA J. CASAL, RPR, CRR, CSR**
            Federal Official Court Reporter
25          445 Broadway, Room 509
            Albany, New York  12207

        *THERESA J. CASAL, RPR, CRR*
    *UNITED STATES DISTRICT COURT - NDNY*

```
 1                    (Court commenced at 831 AM.)
 2              THE COURT:  Good morning.
 3              MS. BOSMAN:  Good morning.
 4              MR. WAGNER:  Good morning, your Honor.
 5              THE COURT:  The first issue I'm dealing with is
 6    Defendant's Exhibit 49, and I have before me the most recent
 7    redacted version.  Follow along with me, if you would.
 8              MR. WAGNER:  I will, your Honor.
 9              THE COURT:  You're not gonna end up doin' this,
10    Mr. Wagner, you know you aren't.
11              MR. WAGNER:  I'm following, though, I got the
12    highlighter out.  So you're gonna tell us what more should
13    be redacted?
14              THE COURT:  Exactly.
15              MR. WAGNER:  That's what I thought.
16              THE COURT:  And then I'll hear from the parties
17    after I tell you what more should be redacted.
18              MR. WAGNER:  Yes.
19              THE COURT:  The first place is page 12 --
20              MR. WAGNER:  And you're going off the bottom pages
21    or the one in the upper left?
22              THE COURT:  I am going off the bottom page number.
23              MR. WAGNER:  Okay.
24              THE COURT:  So this would be D-49, page 12 of 53.
25              MR. WAGNER:  Okay.
```

*Miller v. City of Ithaca, et al. - 10-CV-597*

1          THE COURT:  Under subsection D, "the grievant's

2    hiring and employment by the Ithaca Police Department."

3          MR. WAGNER:  Yes, sir.

4          THE COURT:  After the second full sentence, ending

5    with the citation to C.13,p.M, a bunch of zeroes, 34.

6          MR. WAGNER:  Yeah.

7          THE COURT:  The remainder of that paragraph,

8    "Basile, who was Chief from August of 1997" through, "wasn't

9    telling me the truth, TR1038," the remainder of that

10   paragraph should be redacted.

11         MR. WAGNER:  Got it.

12         THE COURT:  Page 21 of 53 over on to page 22 of

13   53.

14         MR. WAGNER:  Yes, sir.

15         THE COURT:  In the last paragraph, beginning with

16   the Deputy Chief left work at 3:42.  You find it?

17         MR. WAGNER:  I did.

18         THE COURT:  Over onto page 22, through the end of

19   "Deputy Chief Barber also received a similar phone call"

20   should be deleted.

21         MR. WAGNER:  Got it.

22         THE COURT:  Page 29 of 53, the header two-thirds

23   of the way down the page, number three, "the timing of the

24   Notice of Discipline" should be deleted.

25         MR. WAGNER:  Yes, sir.

*Miller v. City of Ithaca, et al. – 10-CV-597*

1        THE COURT:  Page 30.  In the final paragraph under

2   sub A, about a middle of the way down, you have redacted

3   through "need not be explored."  You find that sentence?

4        MR. WAGNER:  Page 30, your Honor?

5        THE COURT:  Page 30 of 53.

6        MS. McCLOSKEY:  He's looking at a highlighted

7   version, you have a redacted version.

8        MR. WAGNER:  I am looking at the proof in this

9   proceeding.

10        THE COURT:  Precisely.  I'm looking at the

11   highlighted version, she's right.

12        MR. WAGNER:  Okay.

13        THE COURT:  It's easier for me to follow the flow

14   of information.  But I had compared, and the highlighted and

15   redacted is the same.  She's helpful because she's

16   absolutely right.  The remainder of that paragraph goes out.

17        MR. WAGNER:  The entirety of the page?

18        THE COURT:  That's right, as you've already

19   redacted sub B.

20        MR. WAGNER:  So just to be clear, that whole --

21   two paragraphs remaining are both out?

22        THE COURT:  If you conclude that last sentence as

23   a separate paragraph, yes.  I do, too.

24        MR. WAGNER:  May I ask a question?  Is that 'cause

25   you'll give a separate instruction on the fact of the

*Miller v. City of Ithaca, et al. - 10-CV-597*

 1    lawsuit had nothing to do with the NOD?

 2            THE COURT:  I hadn't -- I'm gonna talk to you

 3    about that.

 4            MR. WAGNER:  Okay.

 5            THE COURT:  But -- I'm not substituting

 6    Mr. Maroney's judgment for the jury's about retaliation.

 7            MR. WAGNER:  Right.

 8            THE COURT:  So it's out.

 9            MR. WAGNER:  You recall Maroney's decision here

10    and that point was based on Judge McAvoy's summary judgment

11    ruling that knocked that out.

12            THE COURT:  I understand.

13            MR. WAGNER:  Okay, got it.

14            THE COURT:  I'm not sure I understand why that's a

15    concern for you, but I'll talk to you about that.

16            MR. WAGNER:  Thank you.

17            THE COURT:  That's all the further redactions.

18            MR. WAGNER:  Okay.

19            THE COURT:  And I appreciate the renewed

20    redactions.  I thought they substantially took care of the

21    issues that I had with the earlier version.

22            Now let me hear from the parties as to what

23    remains as to whether further redactions are sought.

24    Plaintiff.

25            MS. BOSMAN:  Your Honor, maintaining our objection

*Miller v. City of Ithaca, et al. - 10-CV-597*

 1    to the content at all, we're -- we would consent to the

 2    first page, 1 of 53 --

 3              THE COURT:  I'm not asking for consent.  I want to

 4    know what objections you have to the redacted version with

 5    the supplementation that I have just made and then I'll rule

 6    on your objections.

 7              MS. BOSMAN:  Okay.

 8              THE COURT:  I understand you maintain your

 9    objection to the entirety of the document, I've already

10    overruled that objection.  Go ahead.

11              MS. BOSMAN:  Okay.  The page 2, where it

12    references the number of witnesses that were called, the

13    bottom paragraph, we believe that the length of the

14    transcript and the number of witnesses is misrepresenting

15    because there was a great deal to do with Marlon Byrd's

16    allegations of involvement in drug matters which goes on to

17    page 3 of 53 to the top, the close of that paragraph.  With

18    respect to the remainder of page 3, we would submit that the

19    two paragraphs under "testimonial and evidentiary

20    matters" --

21              THE COURT:  That's already been redacted.

22              MS. BOSMAN:  Yeah, we would say that that would

23    stay in, because it reflects that Mr. Miller waived his

24    Fifth Amendment right and so those first two paragraphs that

25    start with one question that arose and the related question.

*Miller v. City of Ithaca, et al. - 10-CV-597*

1        THE COURT:  Your objection to both of those

2   objections are overruled.  I do take care of your concern in

3   my jury charge when I reference the arbitration decision.

4        MS. BOSMAN:  With respect to page 4 of 53, the two

5   bottom paragraphs -- sorry, the three bottom paragraphs, our

6   position is that all three of those paragraphs should come

7   in or none of them should come in.  The specific language

8   regarding Article III, the second and third paragraph, there

9   is no reason to redact those.  We would challenge that those

10  should remain in.

11       THE COURT:  Overruled.

12       MS. BOSMAN:  On page 4 of -- I'm sorry, page 5 of

13  53, "the grievant's application and employment history"

14  heading --

15       THE COURT:  Yes.

16       MS. BOSMAN:  -- we believe should be redacted.

17       THE COURT:  Overruled.

18       MS. BOSMAN:  The two paragraphs immediately

19  following regarding "parties' respective versions of the

20  facts, with deletions and additions by the arbitrator, are

21  set forth in Sections B through G herein," we believe that

22  that language should stay in.

23       THE COURT:  Overruled.

24       MS. BOSMAN:  The next paragraph -- I'm sorry, the

25  next heading, "the Vinton, Virginia, Police Department

*Miller v. City of Ithaca, et al. - 10-CV-597*

1   employment."  We would submit that that heading should go

2   out.

3            THE COURT:  Overruled.

4            MS. BOSMAN:  And then on page 6 of 53, the last

5   paragraph on that page that says "there is evidence in the

6   record to support the grievant's testimony," that paragraph

7   should stay in.

8            THE COURT:  Overruled.

9            MS. BOSMAN:  On page 7 of 53, we request that the

10  jury -- the last paragraph of that page I understand is

11  still in and "it is undisputed and indisputable that the

12  grievant did not disclose his Vinton employment," we would

13  request that that go out.

14           THE COURT:  Overruled.

15           MS. BOSMAN:  "The Cargill employment" heading we

16  would submit goes out.

17           THE COURT:  Overruled.

18           MS. BOSMAN:  And we request then that the jury be

19  advised that these records were obtained after the NOD was

20  issued in 2010.

21           THE COURT:  Overruled.

22           MS. BOSMAN:  Page 8 of 53, the two paragraphs that

23  identify "the grievant was first suspended from Cargill" and

24  "about a week after the grievant returned, he was discharged

25  for reportedly putting an unknown substance into another

*Miller v. City of Ithaca, et al. - 10-CV-597*

1   employee's locker," we would submit that those go out.

2          THE COURT:  Overruled.

3          MS. BOSMAN:  The statement on the bottom of page 8

4   that says, "I share the City's incredulity," should go out.

5          THE COURT:  That is out.  Are ya lookin' at a

6   redacted version or not?

7          MS. BOSMAN:  Yes.  I'm looking at the --

8          THE COURT:  If you are, then why are ya tellin' me

9   that oughta go out when it's already out?

10         MS. BOSMAN:  Page 8 --

11         THE COURT:  I take it ya have no answer to that

12  question.

13         MS. BOSMAN:  Your Honor, I did not receive the

14  printed copy.  I'm working from one that we redacted in

15  looking at theirs that was sent online.

16         THE COURT:  Are ya tellin' me they didn't provide

17  you with a copy of the redacted version?

18         MS. BOSMAN:  Not hard copy, no; they e-mailed it

19  to us last night.  The following page, page 9, we would

20  submit that "the grievant testified that," bottom two

21  paragraphs should be left in.

22         THE COURT:  Overruled.

23         MS. BOSMAN:  And the "Lieutenant Corbin

24  acknowledged that there had been controversy."

25         THE COURT:  You wish in?

*Miller v. City of Ithaca, et al. - 10-CV-597*

1          MS. BOSMAN:  Yes.

2          THE COURT:  Overruled.

3          MS. BOSMAN:  On page 10, Police Department

4   application is all out, as I understand it, so we would

5   submit that the heading goes out.

6          THE COURT:  What are you talking about?

7          MS. BOSMAN:  On the bottom of page 10, "on

8   January 1, 2010, grievant completed an employment

9   application," under Horseheads.  We believe that that should

10  all go out.

11         THE COURT:  The first paragraph under subsection 6

12  is in.  The remainder has already been redacted.

13         MS. BOSMAN:  Okay.

14         THE COURT:  So the objection's overruled.

15         MS. BOSMAN:  Page 11, as I understand it has been

16  redacted through subsection C.

17         THE COURT:  Yes.

18         MS. BOSMAN:  We would submit that "the grievant's

19  October 5, 1999, Ithaca Police Department application" and

20  the remainder of page 11 should be redacted out.

21         THE COURT:  Denied.

22         MS. BOSMAN:  On page 12, under "the grievant's

23  hiring and employment by the Ithaca Police Department,"

24  under subsection D, the problem there is there's reference

25  to exhibits which are not included.  I understand the Court

*Miller v. City of Ithaca, et al. – 10-CV-597*

1   has eliminated that after the citation to M0034.  We would

2   submit that following paragraph -- no, that's okay.  You've

3   taken that paragraph out.

4        So page 13, the paragraph regarding March of 1996,

5   "Sergeant Valley's report summarized his conversation with

6   the grievant," we would submit that that goes out.

7        THE COURT:  Overruled.

8        MS. BOSMAN:  Where it states, the next paragraph,

9   it says that why would -- I believe that that paragraph,

10  "the grievant was asked at the arbitration," should be in.

11       THE COURT:  Overruled.

12       MS. BOSMAN:  He didn't have time to do it,

13  that's -- that paragraph that ends, "he didn't have time to

14  do it."

15       THE COURT:  Yes, I understand what you're saying.

16       MS. BOSMAN:  We believe that should be in.

17       THE COURT:  I've overruled your objection.

18       MS. BOSMAN:  On page 14, the bottom paragraph I

19  believe is the only one that's in --

20       THE COURT:  Yes.

21       MS. BOSMAN:  -- on that page.

22       THE COURT:  Right.

23       MR. WAGNER:  Just to be clear, your Honor, we have

24  the bottom section, sub set E with the small paragraph or

25  sentence.

*Miller v. City of Ithaca, et al. - 10-CV-597*

```
 1              THE COURT:  Yes.

 2              MR. WAGNER:  Okay.

 3              MS. BOSMAN:  Okay.  And then you, your Honor,

 4   eliminated the paragraphs that followed.

 5              We believe that the -- during the arbitration that

 6   the grievant testified he'd sent a resume we believe should

 7   remain in, and that concludes page 14.

 8              THE COURT:  Overruled.

 9              MS. BOSMAN:  On page 15, we believe that entire

10   subject should go out --

11              THE COURT:  Overruled.

12              MS. BOSMAN:  -- as hearsay within hearsay.

13              Page 16 of 53, the first two paragraphs should

14   stay in if the remainder comes in.

15              THE COURT:  Overruled.

16              MS. BOSMAN:  The Craig's List references on

17   page 17 should go out.

18              THE COURT:  How far --

19              MS. BOSMAN:  The third paragraph from the bottom.

20              THE COURT:  It is out.

21              MS. BOSMAN:  It is.  Page 18.

22              THE COURT:  The entire page is already out.

23              MS. BOSMAN:  Is out.  Next page is out, 19 is out.

24              THE COURT:  You're over to page 21, subparagraph

25   G, "the Notice of Discipline."  I have struck the bottom --
```

*Miller v. City of Ithaca, et al. - 10-CV-597*

1    the beginning of that last sentence on that page through the

2    following page through "phone call."  Other than that, it's

3    in.  Are you objecting?

4              MS. BOSMAN:  No, your Honor.

5              THE COURT:  All right.

6              MS. BOSMAN:  The preparation of it --

7              THE COURT:  And then everything from page 22

8    through 23.

9              MS. BOSMAN:  That's all out.

10             THE COURT:  Through 24, the bottom, beginning with

11   "conclusions," all of that is out already.

12             MS. BOSMAN:  Okay.  The bottom of page 24 under

13   conclusions.

14             MR. WAGNER:  Your Honor, we did have the one

15   sentence on 22, correct?  "The NOD was officially issued to

16   the grievant on June 1, 2010, with the union present," just

17   for clarity.

18             THE COURT:  Yes.

19             MR. WAGNER:  Okay, thank you.

20             MS. BOSMAN:  On page -- I'm on to page 25 now of

21   53, we believe that those last two paragraphs regarding

22   proof beyond a reasonable doubt, proof by a preponderance of

23   the evidence and proof by clear and convincing evidence

24   should remain in, as well as the following paragraph that

25   says the most rigorous standard of proof, beyond a

*Miller v. City of Ithaca, et al. — 10-CV-597*

1    reasonable doubt, applied in criminal prosecutions should

2    remain in.

3              THE COURT:  Overruled.

4              MS. BOSMAN:  On page 26 of 53, I understand that

5    is all out.

6              THE COURT:  Everything from now, page 26, through

7    page 37 is all out.

8              MR. WAGNER:  Except for the clear and convincing

9    evidence sentence on 26, correct, your Honor?

10             THE COURT:  That's right.

11             MS. BOSMAN:  The sentence that begins -- oh,

12   okay.  Then on to page 28 of 53, which I understand is out,

13   page 29, the heading that says the timing of the Notice of

14   Discipline should go out.

15             THE COURT:  I've already ruled it's out.  You have

16   about three minutes, so finish up.  Everything is currently

17   out through page 38.

18             MS. BOSMAN:  Right.  I would ask, your Honor --

19   I'll just go right to 53, which is the next page I've

20   marked.  I would submit that the very last two paragraphs --

21             THE COURT:  You're on page 53?

22             MS. BOSMAN:  Correct.  Those last two paragraphs

23   should go out.

24             THE COURT:  Overruled.

25             MS. BOSMAN:  Thank you, your Honor.

*Miller v. City of Ithaca, et al. – 10-CV-597*

1     THE COURT:  All right.  Let me say as this

2    document currently stands with these redactions, I think it

3    is a fair portrayal of those portions of the decision that I

4    admitted during the trial and for the purposes for which it

5    was admitted.  Principally, that was to foreclose

6    tangential -- mini trials on tangential issues that I found

7    had been adequately resolved according to the standards of

8    due process by the arbitrator during his decision.  From the

9    plaintiff's perspective, and directing this at the

10   defendant, which is all irrelevant at this point, I'm at the

11   point where I'm gonna charge the jury and it has no impact

12   on your argument, I fully intend to tell the jury that

13   Mr. Maroney's decision -- I address this decision in my

14   charge -- is no substitute on the issue of credibility.  In

15   other words, part of the redactions that we've just done

16   here, in the main, have to do with credibility findings, not

17   as to the incidences, as to those I've said they're fixed

18   and there's preclusion on those issues, we weren't gonna

19   conduct mini trials on those issues.  But that having been

20   said, it's the jury's province to make decisions regarding

21   credibility and I make that clear to them in my

22   instructions.

23       All right, anything further on this issue?

24       MS. BOSMAN:  Could I just note for the record that

25   all of the matters that are referenced in Mr. Maroney's

*Miller v. City of Ithaca, et al. - 10-CV-597*

 1  decision were heard at the last trial before Judge McAvoy by

 2  that jury.

 3          THE COURT:  And in the main, those events have

 4  been heard by this jury.  I simply said we weren't gonna

 5  conduct mini trials on those.

 6          MS. BOSMAN:  I understand, your Honor.

 7          THE COURT:  All right.  All right, is there

 8  anything about the charge the parties want to address?

 9          MR. WAGNER:  You were gonna talk to us about the

10  issue of --

11          THE COURT:  The NOD.  I make clear -- I understand

12  that the retaliatory conduct for which the jury is being

13  asked to decide damages has to do with the allegations of

14  discrimination and retaliation that were filed by Mr. Miller

15  and have nothing to do with the initiation of the lawsuit.

16  That's the gist of the instruction you've asked for in that

17  regard.

18          MR. WAGNER:  Correct.

19          THE COURT:  I think I make that clear in my jury

20  charge.  I preface my jury charge with a discussion of the

21  liability issues that the jury has to accept.

22          MR. WAGNER:  My only concern, your Honor, is that

23  while you do do that in the positive, you don't do it in the

24  negative, in the sense of saying it's fixed, you need not

25  concern --

*Miller v. City of Ithaca, et al. - 10-CV-597*

1          THE COURT:  Tell me what your concern is.

2          MR. WAGNER:  The plaintiff created, at multiple

3    junctures in this trial, the perception from which an

4    inference could be drawn that the prior retaliation finding

5    was clearly this coincidence in time of a May 20th filing in

6    federal court and a June 1 NOD.  A logical layperson, not

7    knowing all the facts, might say, well, that's got to be it,

8    and she went down the road on a couple occasions.

9          THE COURT:  I don't understand what it is you're

10   telling us.  What is your concern?

11         MR. WAGNER:  That's already been thrown out.

12   That's not the fixed retaliation verdict.  The fixed

13   retaliation verdict is a finding there was some diffuse

14   retaliation based on Human Rights complaints, not based on

15   the lawsuit.  So maybe it's taken care of by simply saying

16   the fixed retaliation verdict is based on him engaging in

17   protected activity, that being the Human Rights complaint,

18   and not the filing of the lawsuit.

19         THE COURT:  Maybe I'll add that sentence.

20         MR. WAGNER:  I think that actually takes --

21         THE COURT:  I see your point.  I say that, I tell

22   'em that in the jury instructions.

23         MR. WAGNER:  Yeah.

24         THE COURT:  You may not have a problem once you've

25   heard it, but we'll see.

*Miller v. City of Ithaca, et al. - 10-CV-597*

1         MR. WAGNER:  Yeah.  And obviously, we're in a very

2    unique and difficult posture here, never seen anything like

3    it, so I'm trying to kind of work my way through it

4    intellectually just as the Court has been doing.

5         THE COURT:  Let me say for the record in light of

6    the requests from the plaintiff yesterday, this is just more

7    of the same, Miss Bosman, and I had promised you earlier in

8    the trial to make a record of the following observations and

9    I intend to, but I've not wanted to divert anybody's

10   attention away from their job to represent their clients in

11   their best interest.

12        Yesterday, during the charge conference, when I

13   directed the parties to focus on the issue of proximate

14   cause, you told me that you had made a request to charge in

15   that regard and you were renewing that request.

16        MS. BOSMAN:  Yes, your Honor.

17        THE COURT:  Right.  I went back and looked at your

18   requests to charge.  There is about a two-word sentence

19   dealing with proximate cause in your request to charge.  In

20   other words, it was disingenuous, ya did not make such a

21   request.  I went back, I have supplemented proximate cause,

22   making sure that it's a balanced presentation.

23        MS. MIZEL:  Your Honor, if I just may be heard on

24   the suggestion that Miss Bosman made yesterday, that

25   proximate cause can be more than one cause.

*Miller v. City of Ithaca, et al. - 10-CV-597*

1          THE COURT:  Yes.

2          MS. MIZEL:  It's my understanding, aside from the

3     fact that I don't believe Miss Bosman gave any citation

4     other than Judge McAvoy's instruction, so I was left with

5     nothing to look at, that was a much more complicated case

6     than this one, just two incidences which have allegedly

7     caused damage to the plaintiff, and it's my understanding

8     that the kind of instruction that would require, you know,

9     multiple potential proximate causes would usually be

10    involving, you know, tort cases, superseding and intervening

11    causes, foreseeability, unforeseeability, and I think it

12    would unnecessarily confuse the jury.  I think what your

13    Honor did yesterday seemed -- certainly seemed reasonable to

14    us, so I just wanted to put that on the record, your Honor.

15         THE COURT:  I have no doubt what I did yesterday

16    did seem reasonable to you, but I've now balanced it with

17    multiple -- but when you listen to it -- in other words,

18    what I've said to the parties is this:  We're at a point,

19    given the procedural posture, where we've beat these as much

20    as we can beat 'em and we still have to move on.  So we're

21    gonna do this exactly like it's intended under the law.

22    I'll go ahead and give it, I'll then request whether there

23    are objections or additions that either party seeks.  If the

24    answer to that is "yes," I'll do what I did the first time

25    around, I'll send 'em out with an instruction not to begin

*Miller v. City of Ithaca, et al. – 10-CV-597*

1   their deliberations, I'll hear the parties, I'll rule on it

2   and I will or will not then supplement the instruction.

3   That's the best I can tell ya.  Okay.

4           MR. WAGNER:  One more issue, your Honor.

5           THE COURT:  I know we have a remaining issue on

6   the redaction.

7           MR. WAGNER:  Got it.

8           THE COURT:  Just not gonna be able to reach it at

9   this point.

10          MR. WAGNER:  Got it.

11          THE COURT:  We will reach it before it's submitted

12  to the jury.

13          MR. WAGNER:  Absolutely, your Honor.  Would you

14  like Ellie then, who did the redactions per your order this

15  morning, to e-mail that to John so it can be printed out for

16  the jury?

17          THE COURT:  That's fine.

18          MS. BOSMAN:  Your Honor, my records show we filed

19  that on January 20th.

20          THE COURT:  I have your filing.  What I'm saying

21  is go back and read it at some point.  Doesn't say what you

22  said.

23          MS. BOSMAN:  The attachment, I have it on the

24  computer.

25          THE COURT:  I'm not gonna sit here and debate with

*Miller v. City of Ithaca, et al. — 10-CV-597*

1   you with more of the same, Miss Bosman.  I've got it, I got

2   it right here on the bench what ya submitted.

3           MS. BOSMAN:  And that doesn't have that

4   language --

5           THE COURT:  No, it does not.

6           MS. BOSMAN:  -- from Judge McAvoy's?

7           THE COURT:  No, Miss Bosman, it does not.  I'll be

8   back on the bench in a minute.

9           MR. WAGNER:  Thank you, your Honor.

10                  (Short recess taken at 9:00 AM.)

11                  (Court reconvened at 9:03 AM.)

12                  (Jury present.)

13          THE COURT:  Good morning, folks.  As I told you

14  earlier, this phase of the trial deals with damages and the

15  evidence you have heard regarding that subject.  Before I

16  begin, I want to remind you of the liability conclusions

17  that have already been reached that you must accept as you

18  consider damages.

19          First of all, and as you know, since that was the

20  subject of your earlier verdict, you have already decided

21  that under the federal employment and State Human Rights

22  laws, Mr. Miller has proven by a preponderance of the

23  evidence that the 2009 beat assignment changes were material

24  adverse actions by the City of Ithaca and his complaints of

25  discrimination and retaliation made to the Human Rights

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

*Court's Charge*

1    Division were a critical element in the City's decision to

2    take that action.

3            When we began this phase of the trial, I told you

4    that for reasons that need not concern you, and that remains

5    as true now as it was then, you must accept the conclusion

6    that under the same federal and state laws, Mr. Miller has

7    proven by a preponderance of the evidence that the June 1,

8    2010, Notice of Discipline was a material adverse action by

9    the City of Ithaca and by Edward Vallely, John Barber and

10   Pete Tyler, and that Mr. Miller's discrimination and

11   retaliation complaints made to the Human Rights Division

12   were a substantial element in the City's and individual

13   defendants' decision to take that action.

14           Therefore, since Mr. Miller has sustained his

15   burden of proving those two claims, you must now decide what

16   amount of compensatory damages, if any, he has proved by a

17   preponderance of the evidence that he is entitled to on each

18   claim and as to each defendant.

19           You must consider the issue of damages separately

20   as to the City on each of the two claims and separately as

21   to each individual defendant on the second claim.  Bearing

22   in mind my prior instructions, all of which apply to this

23   phase of your deliberations and which, as you'll recall,

24   include important directions regarding your consideration of

25   the evidence and the deliberative process, you are now to

*Court's Charge*

1  consider what, if any, damages you should award on each of

2  Mr. Miller's claims of retaliation as I have just described

3  them.  In addition to my prior instructions, there are a few

4  matters that I need to specifically address as they relate

5  to this phase of the trial.

6          I permitted Dr. Lynch to testify as an expert and

7  to express his opinions about matters that are at issue.

8  Other medical evidence was submitted through treatment

9  providers and they were not called as experts.  A witness

10 such as Dr. Lynch may be permitted to testify to an opinion

11 on those matters about which he has special knowledge,

12 skill, experience and training.  Such testimony is presented

13 to you on the theory that someone who is experienced and

14 knowledgeable in the field can assist you in understanding

15 the evidence or in reaching an independent decision on the

16 facts.  In weighing this opinion testimony, you may consider

17 the witness' qualifications, his opinions, the reasons for

18 testifying, as well as all of the other considerations that

19 ordinarily apply when you are deciding whether or not to

20 believe a witness' testimony.  You may give the opinion

21 testimony whatever weight, if any, you find it deserves in

22 light of all of the evidence in this case.

23         You should not, however, accept opinion testimony

24 merely because I allowed the witness to testify concerning

25 his opinion, nor should you substitute it for your own

*Court's Charge*

1  reason, judgment and common sense.  The determination of the

2  facts in this case rests squarely with you.

3         As you will remember, I admitted some evidence

4  only for limited purposes.  You must consider all such

5  evidence only for the reasons I allowed it and for no other.

6  In this regard, the limited purpose for which evidence has

7  been offered, I want to comment on Thomas Maroney's

8  February 27, 2013, arbitration decision, which I have

9  admitted in a redacted form as Defendant's Exhibit 49.

10         In its original form, Mr. Maroney's decision is a

11  53-page document discussing numerous facts and issues that I

12  have deemed inadmissible for purposes of this trial.

13  However, I have also concluded that, among other factors,

14  given the breadth and scope of that hearing, the right of

15  everyone to be heard and the fact that all parties were

16  represented by counsel, certain events relevant to this

17  trial have been established in that proceeding.  It is

18  important for you to understand, however, that what you

19  are now deciding is not the ultimate issue decided by

20  Mr. Maroney, and the redacted decision may be used only for

21  the limited purposes that I permitted during the trial.  It

22  may be generally said that, in part, those purposes had to

23  do with whether certain underlying events occurred.  I also

24  admitted evidence of the events for your consideration on

25  issues of credibility.  I want to make it abundantly clear,

*Court's Charge*

1   however, just as I did in my original instructions, that all

2   issues of credibility are exclusively yours to make, just as

3   the facts relative to your consideration of damages are

4   within your exclusive province to find.  Issues of

5   credibility and those facts you find relevant and

6   persuasive, given the decision you must make, do not belong

7   to me, do not belong to the lawyers and they do not belong

8   to Mr. Maroney.

9           One last comment on Mr. Maroney's decision is

10  warranted.  You should accept the fact that Mr. Miller's

11  employment was legally terminated as of February 28, 2013.

12  I remind you that it was the June 1, 2010, Notice of

13  Discipline that you must accept as the material adverse

14  action supporting Mr. Miller's second claim.  The extent to

15  which, if any, that Mr. Miller's lawful 2013 discharge has a

16  bearing on your decision regarding damages is entirely up to

17  you, as is the weight and effect of all evidence.

18          One last thing before I turn to the subject of

19  damages.  I want to remind you about what I have already

20  told you about the subject of trial fluff.  My interaction

21  with the lawyers has absolutely no bearing on the decision

22  you're being asked to make.  Mr. Miller, Mr. Vallely,

23  Mr. Barber, Mr. Tyler and the City of Ithaca have every

24  expectation that you will impartially consider the evidence

25  and reach an impartial verdict based upon the burden of

*Court's Charge*

1   proof and the relevant evidence and that you will not be

2   diverted by my exchanges with counsel.

3           I now turn to damages, again reminding you that

4   you must consider damages as to each defendant individually.

5           The fact that I am instructing you on compensatory

6   damages does not suggest that I have any view on whether

7   compensatory damages would be fair or have been proven in

8   this case.  The question of whether compensatory damages are

9   proven and, if so, what amount would fairly compensate

10  Mr. Miller is solely up to you.  So, too, Mr. Miller's

11  attorney has suggested some amount.  Again, that is not her

12  province, that is yours.

13          As I said, Mr. Miller has the burden of proving

14  his damages by a preponderance of the evidence.  The purpose

15  of the law of damages is to award, as far as possible, just

16  and fair compensation for the loss, if any, which resulted

17  from the violation of Mr. Miller's rights by the defendants.

18  You must award Mr. Miller sufficient damages to compensate

19  him for any injury proximately caused by the defendants'

20  conduct.  These are known as compensatory damages.

21          Compensatory damages seek to make the plaintiff

22  whole; that is, to compensate him for the damage suffered.

23  A prevailing plaintiff is entitled to compensatory damages

24  for emotional pain, suffering, inconvenience, mental

25  anguish, loss of enjoyment of life, injury to professional

*Court's Charge*

1    standing, injury to character and reputation and to other

2    non-pecuniary loss that he has suffered because of the

3    defendants' unlawful conduct.

4         Under the circumstances of this case, Mr. Miller

5    is not entitled to receive any back pay, front pay or any

6    other economic damages resulting from these claims because

7    he suffered no such loss.  You may award him damages only

8    for such emotional distress as he can prove resulted from

9    the distinct instances of retaliation by the defendants

10   related to the beat assignments in 2009 and the issuance of

11   the June 1, 2010, Notice of Discipline.  You may not award

12   damages related to his 2013 termination because that

13   termination was lawful by virtue of the arbitrator's

14   decision, and you may not award damages based on emotional

15   harm suffered by Mr. Miller's wife or children, although you

16   may consider the evidence regarding his wife and children,

17   to the extent it shows an impact on him.  The choice to

18   consider any evidence for any purpose is always your

19   exclusive province.

20        As I told you a moment ago, you may award

21   compensatory damages only for injuries that Mr. Miller

22   proves were proximately caused by the wrongful conduct of

23   the defendant you are considering.  An injury is proximately

24   caused by a defendant's wrongful conduct if the conduct

25   actually caused the injury or was a substantial factor in

*Court's Charge*

1   bringing about that injury, and if the injury was a

2   reasonably foreseeable consequence of the defendant's

3   conduct.  This does not mean that the law recognizes only

4   one proximate cause of an injury or damage, consisting of

5   only one factor or thing or the conduct of only one person.

6   To the contrary, many factors or things or the conduct of

7   two or more persons may operate at the same time, either

8   independently or together, to cause injury or damage and

9   each may be a proximate cause, as long as those things

10  constituted a part of the defendant's wrongful conduct and

11  were substantial factors in bringing about the injury or

12  damage.  However, to be a proximate cause, there must not be

13  any other cause that interrupted or succeeded the alleged

14  wrongful conduct of the defendants.  Thus, if Mr. Miller

15  suffered emotional distress because of other events in his

16  life, or because of his own conduct, unrelated to the

17  defendants' retaliatory beat assignment changes or the

18  Notice of Discipline, this distress was not proximately

19  caused by the defendants and they're not responsible for

20  paying damages for any such distress.

21          On the other hand, if Mr. Miller has proved to

22  your satisfaction by a preponderance of the evidence that

23  such damages were proximately caused by the defendants'

24  retaliatory conduct, then you should award him compensatory

25  damages that are fair and reasonable, neither inadequate nor

*Court's Charge*

1   excessive.  You should not award compensatory damages for

2   speculative injuries, but only for those injuries that

3   Mr. Miller has actually suffered or which he is reasonably

4   likely to suffer in the near future.

5           In awarding compensatory damages, if you decide to

6   award them, you must be guided by dispassionate common

7   sense.  Computing damages may be difficult, but you must not

8   let that difficulty lead you to engage in arbitrary

9   guesswork.  On the other hand, the law does not require any

10  plaintiff to prove the amount of his losses with

11  mathematical precision, but only with as much definiteness

12  and accuracy as the circumstances permit.

13          In all instances, you are to use sound discretion

14  in fixing an award of damages, drawing reasonable inferences

15  where you deem appropriate from the facts and circumstances,

16  given your evaluation of all of the evidence in this case.

17  You should not award compensatory damages more than once for

18  the same injury.  By way of example only, if a plaintiff

19  were to prevail on two claims and establish a $1 injury, you

20  could not award him $1 compensatory damages on each claim,

21  he's only entitled to be made whole again, not to recover

22  more than he lost.  Of course, if different injuries are

23  attributable to the separate claims, then you must

24  compensate him fully for all of his injuries.

25          If you find, after considering all the evidence

*Court's Charge*

1  presented, that Mr. Miller suffered no injury as a result of

2  the defendants' conduct, you must award him nominal damages

3  of $1.  Nominal damages are awarded in recognition that

4  Mr. Miller's rights have been violated.  You will award

5  nominal damages if you conclude that the only injury

6  Mr. Miller proved he suffered was the deprivation of his

7  rights without any resulting compensatory damages.  You must

8  also award nominal damages if, upon finding that some injury

9  resulted from a given unlawful act, you find you are unable

10 to compute monetary damages except by engaging in pure

11 speculation and guessing.  You may not award both nominal

12 and compensatory damages to Mr. Miller.  Either he was

13 measurably injured, in which case you must award

14 compensatory damages, or else he was not, in which case you

15 must award nominal damages of $1.

16         One last comment of damages in light of

17 Miss Bosman's summation yesterday afternoon.  Naturally, you

18 should consider the arguments of both counsel to the extent

19 you find them helpful in the evaluation of the evidence you

20 have heard and the conclusion on damages you must make.

21 However, she appeared to argue that a part of your damage

22 assessment should include, and I'm paraphrasing, that you

23 send a message to the Ithaca Police Department and all

24 police departments in New York that they cannot trample on a

25 citizen's Human Rights.  To the extent I've characterized

*Court's Charge*

1   that portion of her argument accurately, you must totally

2   disregard that argument as you decide the damages issue

3   before you.  Such an argument is addressed to passion and a

4   desire to punish, the subjects of what are typically

5   referred to as punitive damages.  Punitive damages have no

6   bearing on the issues in this case whatsoever and you must

7   disregard any such thoughts or arguments.

8        Just as with the first part of this trial, verdict

9   forms have been prepared for you.  Once you've reached a

10   unanimous verdict, your foreperson should fill in the

11   verdict form, date and sign it and inform the marshal that a

12   verdict has been reached.  Again, if you have any questions

13   during your deliberations, your foreperson should put them

14   in writing, pass 'em to the marshals and we'll respond as

15   quickly as we can.

16        Are there any objections or additions to the

17   instructions, plaintiff?  The answer to that is "yes" or

18   "no."

19        MS. BOSMAN:  No, your Honor.

20        THE COURT:  All right.  Defendants.

21        MR. WAGNER:  No, your Honor.

22        THE COURT:  All right.  Ladies and gentlemen,

23   you're free to retire to your deliberations.  Before you go,

24   we will swear the marshal; I'm not sure it's necessary, but

25   we're gonna do it.

*Deliberations*

1              (Marshal duly sworn.)

2          THE COURT:  You're free to go, folks.

3              (Jury excused to commence deliberations

4              at 9:22 AM.)

5          THE COURT:  Let's take up, if we will, the

6    separate issue of the admissibility of Exhibit D-34.

7          MR. WAGNER:  Yes, your Honor.  And you received

8    our redactions on that, your Honor?

9          THE COURT:  I did.

10          MR. WAGNER:  Thank you.

11          THE COURT:  Miss Bosman, please.

12          MS. BOSMAN:  Your Honor, on page -- I'm

13   referencing the bottom designation.  Page 1 of 39.

14          THE COURT:  Yes.

15          MS. BOSMAN:  We believe that all of A and B at the

16   bottom of the first page should go out, a determination and

17   order after investigation to pages dated and the final

18   investigation report and basis of determination pages to

19   conclusion.

20          With respect to --

21          THE COURT:  Well, as I understand the offer,

22   Miss Bosman -- I understand what the nature of the objection

23   was you interposed at the time, and that was that it got

24   into issues involving the Human Rights complaints, and --

25   but the purpose of the offer as I understood it was to

*Deliberations*

1    establish those things upon which Dr. Lynch relied in

2    rendering his opinion.  In other words, it was a recitation

3    of the materials submitted to him, and it was only for that

4    purpose that I permitted it.  In my view -- I understand why

5    you focus on those two things, but in my view they don't do

6    anything to share with the jury the substance of any of

7    those complaints and certainly the primary thrust of your

8    case is is that your client was retaliated against as a

9    result of those complaints.  So to say -- to leave in there

10   that he reviewed those complaints is not the same thing as

11   divulging the details of those complaints that he reviewed.

12   So I'm satisfied that those things should remain in there

13   because I don't think they impinge on the basis of your

14   objection.  Go ahead.  Next issue.

15          MS. BOSMAN:  We have the same objection with

16   respect to page 8 of 39, A and B.  We believe that the final

17   conclusions of the Human Rights Commission is prejudicial

18   and not submissible before the jury.

19          THE COURT:  I agree that on page 8, under sub 8 --

20          MR. WAGNER:  Sub A.

21          THE COURT:  -- 1(a), "the complaint is dismissed

22   and the file is closed" should be redacted, I agree with

23   that, Miss Bosman.

24          MR. WAGNER:  Yeah, and sorry for that oversight,

25   we meant -- the part that was redacted sort of repeats that,

*Deliberations*

1    so we would agree with that, your Honor.

2            THE COURT:  All right.

3            MS. BOSMAN:  But not the conclusion recommending

4    finding of no probable cause, correct?

5            THE COURT:  Where are you now?

6            MS. BOSMAN:  One subsection --

7            THE COURT:  That's out.

8            MS. BOSMAN:  Page 9 of 39, subsection K, that's

9    out, okay.

10           On page 15, under 19, they have proposed a

11   redaction of "the records indicate a starting date was," so

12   on, so forth.  I don't believe that that should go out.  I

13   believe it should go ahead and stay in.

14           THE COURT:  Given the purposes for which I've

15   admitted the exhibit, subject to redaction, your objection

16   is overruled.

17           MS. BOSMAN:  With respect to page 17 of 39, the

18   memorandums that are reflected are all out, as I understand

19   it, down to "in a letter to Mr. Miller on 10/20/2000," we

20   consent to that.

21           THE COURT:  Please focus on those things you

22   object to.

23           MS. BOSMAN:  Under page 19 --

24           THE COURT:  The entire page is out.

25           MS. BOSMAN:  That's already out.

*Deliberations*

1                    (Pause in proceedings.)

2          MS. BOSMAN:  On page 22, where it talks about the

3     e-mail to Jerry Feist regarding an IME report of 8/2/11,

4     where he states to the psychologist "physical disability is

5     the only thing I can have, I can never go back to my career

6     as a cop."  I don't believe that that exhibit had come in so

7     I would object to that language, that one sentence.

8          THE COURT:  Overruled.

9          MS. BOSMAN:  With respect to page 23 --

10         THE COURT:  It's not a matter of whether the

11    exhibit came in, it's a matter of what did Dr. Lynch rely on

12    in rendering his opinion.  That's the purpose for which it

13    was offered.

14         MS. BOSMAN:  Page 24, we would request that the

15    reference to the April 9, 1997, letter from the Vinton

16    Police Department terminating him, that paragraph should go

17    out.

18         THE COURT:  Overruled.

19         MS. BOSMAN:  With respect to his leaving the job

20    following -- followed a vandalism incident, that should go

21    out.

22         THE COURT:  Overruled.  I should note in that

23    regard there's ample evidence in the record to support both

24    of those recitations, but that having been said, that's

25    still not the purpose of the offer here.  I presume, of

                    *THERESA J. CASAL, RPR, CRR*
                 *UNITED STATES DISTRICT COURT - NDNY*

*Deliberations*

1  course, the jury will comply with my instructions that they

2  should consider this exhibit for the purposes for which it

3  was offered, if that issue even arises in their minds.

4          MS. BOSMAN:  On page 26, we want to have in the --

5  Mr. Miller had an MVA on May 7, 2008 -- so that's out, we

6  want it in.

7          THE COURT:  I'm sorry, I have the redacted version

8  in front of me, the blackened version.

9          MS. BOSMAN:  It says Mr. Miller had an MVA on

10  May 7, 2008, he states he was wearing a seat belt but was

11  issued a ticket for not wearing a seat belt.  He states he

12  was found not guilty of the offenses he was ticketed for,

13  and then the last paragraph as well, which states on

14  June 11, 2009, Mr. Miller was issued a traffic ticket which

15  he said they issued one for speeding, 52 miles per hour when

16  I was found going only 31 miles per hour as the driving data

17  showed.  This involved the MVA of 2008, it is alleged he was

18  not wearing his seat belt.  He states he had his doctor's

19  note relieving him of this responsibility.

20          THE COURT:  Do the defendants object to putting

21  those two things back in?

22          MR. WAGNER:  No, your Honor.

23          THE COURT:  Put 'em back in.

24          MS. BOSMAN:  Page 32 is okay, 33 is out.  And then

25  page 31 -- I'm sorry, page 37.  At this point, your Honor, I

*Deliberations*

1    don't believe that it makes any difference.

2            So those are the only comments I have on that

3    exhibit.

4            THE COURT:  All right.  Consistent with my

5    rulings, if you would further redact the exhibit and then

6    provide it to Mr. Law, we'll print it and provide it to the

7    jury.

8            MR. WAGNER:  So unredact the two that we didn't

9    object to and redact the one that you ordered.

10           THE COURT:  Exactly.

11           MR. WAGNER:  We'll do so, your Honor.  Your Honor,

12   there's also these e-mail exhibits that we had proposed

13   redactions to, Plaintiff's Exhibits 27, 29, 30, 31, and 48,

14   we had proposed redactions early yesterday, we gave 'em to

15   plaintiff's counsel with orange highlights of --

16           THE COURT:  Have you had a chance to review those?

17           MS. BOSMAN:  I'm prepared, your Honor, yes.

18           THE COURT:  Do you have objections to the

19   redactions they have made?

20           MS. BOSMAN:  Yes.

21           THE COURT:  All right.  I'm not prepared to

22   proceed, I don't know whether I have those in front of me or

23   don't.  I'm not tellin' ya they weren't sent, not tellin' ya

24   I didn't receive 'em.  I didn't look at 'em yet.

25           MR. WAGNER:  So we have them highlighted in orange

*Deliberations*

1    of what we think should be redacted.  Probably the most

2    efficient thing to do, which would leave us without a copy,

3    is to hand 'em to your Honor, have Miss Bosman make any

4    objections and then --

5                MS. McCLOSKEY:  We have two copies.

6                MR. WAGNER:  Oh, we do?

7                THE COURT:  Yes.  Somebody give me a copy so I can

8    look at 'em before we have any discussion regarding them

9    whatsoever, which means I'm leaving the bench to do that,

10   but before they're submitted to the jury we'll need to

11   resolve these, but I can't make intelligent decisions

12   without looking at them.

13               MR. WAGNER:  Okay.  We are gonna hand you the

14   highlighted one and the blacked out one consistent with our

15   practice on the other issues, and we do have a blacked out

16   separate copy that we can follow along.

17               THE COURT:  All right.  I'll let ya know when I'm

18   done.

19               MS. BOSMAN:  Your Honor?

20               THE COURT:  Yes.

21               MS. BOSMAN:  For the record, we did locate the

22   proposed jury charges including the language I quoted

23   yesterday, it is docket number 657 --

24               THE COURT:  Filed two days ago.

25               MS. BOSMAN:  Correct.

*Deliberations*

1            THE COURT:  Right.  I was talking about your

2     initial pretrial submissions of requests to charge on the

3     issue of proximate cause.  That's what I'm talkin' about.

4            MS. BOSMAN:  Okay.  But that was where I quoted

5     the language from yesterday.

6            THE COURT:  No, I know ya did.

7            MS. BOSMAN:  Okay.

8            THE COURT:  And as you see from my charge, I

9     incorporated portions of that into the charge.  We'll

10    address that later.

11                      (Short recess taken at 9:34 AM.)

12                      (Court reconvened at 9:46 AM.)

13           THE COURT:  All right, I've reviewed the exhibits

14    that have been submitted to me.  I begin with P-27.

15           The defendants propose the redaction of the --

16    one-third of the page, after Vallely, beginning with the

17    word "could," ending with the word "thank you, Chris."  I

18    reject that redaction except for the -- I reject a portion

19    of that redaction as follows:  I will permit the first

20    sentence after Vallely to stand, "could you please look into

21    the fact that Andy Navarro posted my retaliation claim on

22    the bulletin board in the patrol room in front of most of

23    two shifts," and then would redact the remainder of that

24    paragraph.

25           MR. WAGNER:  So starting with "on 7/23," all the

                    ***THERESA J. CASAL, RPR, CRR***
              ***UNITED STATES DISTRICT COURT − NDNY***

*Deliberations*

1    way down to the bottom.

2              THE COURT:  Exactly.

3              MR. WAGNER:  Got it, your Honor.

4              THE COURT:  To "retaliation."  I would leave

5    "thank you, Chris."

6              MR. WAGNER:  Yep.

7              THE COURT:  Objections, plaintiff.

8              MS. BOSMAN:  Yes, your Honor.  We would object to

9    anything on that paragraph being redacted except that

10   portion beginning "on 7/23, at approximately 6:00 PM,

11   Navarro also made crude sexual comments."  We would consent

12   to that.

13             THE COURT:  I understand you would consent, but

14   your objection is overruled.  That is precisely why I

15   required redaction.  The remainder of that paragraph delves

16   into matters I deemed inadmissible.

17             Plaintiff's 29, the proposed redaction is from the

18   beginning, "Vallely," through the end, "thank you, Chris."

19   Does the plaintiff object to that redaction?

20             MS. BOSMAN:  Yes, your Honor.  It's our position

21   it goes to state of mind of damages.  We would consent with

22   the redaction up to the point where it says "I don't know if

23   anyone will speak about it."

24             THE COURT:  The objection is overruled, the

25   redaction is authorized, again it relates to matters I held

*Deliberations*

1   inadmissible during the course of this trial.  I'm not gonna

2   allow things to go in as an exhibit that I've ruled

3   inadmissible by way of testimony.

4          I'm now on Plaintiff's 30.  Do the parties have

5   the two highlighted sentences that the proposed redaction

6   relates to?  In other words, rather than me tryin' to

7   identify 'em, are you both on the same sheet of music as to

8   where the two proposals come?

9          MR. WAGNER:  You mean in the first e-mail message,

10  your Honor?

11         THE COURT:  Yes.

12         MR. WAGNER:  Yeah, I've got -- Ellie's got the

13  unredacted on the computer and I've got the redacted in my

14  hand.

15         THE COURT:  And Miss Bosman, you have the same

16  thing.  In other words, I don't want to identify it.

17         MR. WAGNER:  Correct.

18         THE COURT:  The question is whether those two

19  sentences should go out that are highlighted on Plaintiff's

20  Exhibit 30, Miss Bosman.

21         MS. BOSMAN:  Yes, your Honor, we'd object.

22         THE COURT:  All right.  The objection's overruled.

23  Same reason.  It relates to matters I held inadmissible in

24  trial.

25         Plaintiff's 31 -- it's really the same two

*Deliberations*

1  sentences.  I'm sustaining the defendants' view that those

2  two sentences are subject to redaction based upon my trial

3  order.  As to Plaintiff's Exhibit 31, it's really a string

4  e-mail that references the same two sentences that I just

5  ruled inadmissible.  I presume the plaintiff's objection is

6  wishing them to remain as she did on the previous exhibit,

7  my ruling is the same.  Those redactions should occurred.

8           That takes us to what I presume is Plaintiff's

9  Exhibit 48.

10          MR. WAGNER:  Correct, your Honor.

11          THE COURT:  All right.  Again referencing the two

12  highlighted portions that the City has highlighted seeking

13  redaction based upon my trial rulings, Miss Bosman, your

14  position?

15          MS. BOSMAN:  I don't have 48.  What is 48?

16          THE COURT:  It's your exhibit.  The highlighted

17  portions relate to other officers lying on forms, Ithaca

18  College Public Safety, Nelson --

19          MS. BOSMAN:  We're lookin', I'm sorry, your Honor.

20          THE COURT:  All right.

21          MS. BOSMAN:  We would consent to the redaction of

22  Nelson and Moore's name only, your Honor.

23          THE COURT:  Overruled.  I concur, once again, the

24  redaction proposed is consistent with my trial rulings.

25          MR. WAGNER:  So, your Honor, the only one we need

*Deliberations*

1   to touch up was Number 27, we'll go ahead and modify the

2   redaction per your order, we'll give John that on a thumb

3   drive and, in the meantime, here are the redacted versions

4   of 29, 30, 31 and 48, which are in their original redacted

5   form which your Honor felt was appropriate.

6            THE COURT:  Okay.

7            MS. BOSMAN:  Your Honor, could I get clarification

8   on Exhibit 30?  The paragraph on the second e-mail string at

9   the bottom, "hi, Chris," starts out "with respect to the

10  investigation, yes, I will remain in touch with IPD to

11  ensure the allegations are investigated promptly."  We

12  request that stay in.  I don't -- my copy indicates that it

13  was redacted.

14           THE COURT:  Where are you?

15           MS. BOSMAN:  P-30.

16           THE COURT:  Yeah.

17           MS. BOSMAN:  The second e-mail string.

18           THE COURT:  Beginning with "hi, Chris."

19           MS. BOSMAN:  Yes.  The paragraph that's redacted

20  says "with respect to the investigation, yes, I will remain

21  in touch with IPD to ensure that the allegations are

22  investigated promptly."  I believe the investigation

23  regarding the allegation and assertion of --

24           THE COURT:  I don't show that as redacted.

25           MS. BOSMAN:  Pardon?

*Deliberations*

1           THE COURT:  I don't show that as redacted?

2           MS. BOSMAN:  I do.

3           MR. WAGNER:  We did on ours, your Honor

4   (indicating).

5           THE COURT:  That's not what I had.

6           MR. WAGNER:  It's not highlighted?

7           THE COURT:  No.  Let me see it.

8           MR. WAGNER:  May I approach, your Honor?

9           THE COURT:  You may.

10          MR. WAGNER:  I apologize, I don't have the

11  highlighted, but you can compare them and see.

12          THE COURT:  (Pause.)  I concur with Miss Bosman,

13  that should remain.

14          MR. WAGNER:  The whole paragraph, your Honor?

15          THE COURT:  The whole paragraph.

16          MR. WAGNER:  All right.  So we'll fix 30 and 27

17  and submit -- resubmit those.

18          THE COURT:  Anything further?

19          MS. BOSMAN:  Could I just make a record, your

20  Honor, with respect to the language in the charge regarding

21  Mr. Miller's being legally terminated on June 1, 2013, (sic)

22  and the reference to the extent that the discharge was

23  lawful?  We presume that the Court is relying on Judge

24  McAvoy's post- -- post-trial decision and we continue our

25  objection to a determination that the termination was

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

*Deliberations*

1   lawful.  Our position is that it was based upon a

2   retaliatory Notice of Discipline.

3            THE COURT:  What is it you want me to do about

4   that in light of the fact that now I have charged the jury

5   and you interposed no objections?  What are you now

6   objecting to?  Are you objecting to a charge

7   post-submission, post-deliberation, which you failed to

8   object to at the time?

9            MS. BOSMAN:  Your Honor, I do not have a copy of

10  the charge.  I --

11           THE COURT:  Ya sat there and listened to it.

12           MS. BOSMAN:  I did.

13           THE COURT:  You understand how trials are

14  conducted.

15           MS. BOSMAN:  I've never not been provided a charge

16  before, your Honor.  I have never had this experience.

17           THE COURT:  What I'm asking you is a very

18  straightforward question, which I don't want obfuscated with

19  some obfuscated answer.  I have charged the jury, they are

20  now in their deliberations, you are now raising for the

21  first time a portion of that charge which you object to.

22  What is it you want me to do?  What are you asking me to do

23  in light of your objection?

24           MS. BOSMAN:  I am asking to preserve the record,

25  your Honor.  I don't believe that there has been a

*Deliberations*

1    determination, except by Mr. Maroney, that Mr. Miller was

2    legally terminated in 2013.

3              THE COURT:  All right.

4              MS. BOSMAN:  That's my objection.  I understand

5    that the Court has made a determination that it was based

6    upon that.

7              THE COURT:  That's not what I'm talking about.

8    What I'm talking about, and for purposes of the Circuit, I

9    believe you've waived any objection in that regard by

10   failing to object to that portion of the charge when you

11   were asked whether ya had any objections to the charge.  So

12   from a process, a procedural standpoint, you cannot, in the

13   midst of deliberations, revisit an issue that was instructed

14   to the jury as a matter of law, and that's why I asked you

15   what is it you want me to do.  I presume you're not

16   proposing I interrupt their deliberations, bring 'em back

17   out and change an instruction I gave 'em that ya failed to

18   object to when I asked you.

19             MS. BOSMAN:  Well, then, I would ask that a

20   clarifying instruction be provided regarding the term

21   "legally terminated" and the term "to the extent that the

22   discharge was lawful."  As I understand it, the Court was

23   relying upon the Maroney decision.

24             THE COURT:  Overruled.

25             MR. WAGNER:  We'll have those in a moment, your

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

*Deliberations*

1   Honor.

2             THE COURT:  All right.

3             MR. WAGNER:  Twenty-seven and 30, John

4   (indicating).

5                     (Court recessed to await the verdict at

6                     9:59 AM.)

7                     (In open court with a note at 11:23 AM.)

8             THE COURT:  We have a note, reads as follows.

9   Testimony from Mr. Miller when the comment, quote, Lotto,

10  was said.  The two minutes before and after we would like to

11  hear.

12            Theresa has scoured the record with her search

13  capability.  She has found the comment Lotto as expressed by

14  Mr. Miller.  In essence, it's a page or two, a page per

15  minute, depending on how many objections have to be ruled

16  upon and excluded, so we've taken a few pages before and a

17  few pages after, we're prepared to read that to the jury.  I

18  will then inquire of the jury whether that's what they're

19  seeking to hear and if it's anything further, they should

20  send us another note.

21            MR. WAGNER:  The word was Lotto?

22            THE COURT:  Lotto, L-O-T-T-O.

23            MR. WAGNER:  Thank you, your Honor.

24            THE COURT:  Any objection in the way I propose to

25  proceed?

*Deliberations*

```
 1              MR. WAGNER:  None from the defense.

 2              MS. BOSMAN:  No, your Honor.

 3              THE COURT:  All right.  Bring in the jury, John,

 4    if you would.

 5                      (Jury present.)

 6              THE COURT:  I've received a note from your

 7    foreperson that reads as follows:  Testimony of Mr. Miller

 8    when the comment, quote, Lotto, by him was said.  The two

 9    minutes before and after we would like to hear.

10              The record is not prepared in terms of timing,

11    minutes, but we know basically how many minutes a page there

12    is, so Theresa has located that comment and a few pages

13    before and a few pages after, she'll read that for you.  If

14    that does not satisfy whatever it is you're looking for,

15    please send me out another note asking for an expansion as

16    specifically as you can.

17              Theresa, would you, please.

18                      (Record read back.)

19              THE COURT:  That concludes that testimony.  As I

20    said, if there's any expansion you want, please let us know.

21                      (Jury excused to continue deliberations

22                       at 11:32 AM.)

23              THE COURT:  Miss Bosman, would you remain, please.

24              MS. BOSMAN:  Yes, your Honor.

25              THE COURT:  No one else is obligated to be
```

*Deliberations*

1   present, anybody else may leave if they wish.

2           MR. WAGNER:  Do you want me here or not?

3           THE COURT:  I don't care.  You're free to leave if

4   you wish.

5           MR. WAGNER:  Am I free to stay?

6           THE COURT:  You're free to stay if you wish.

7           MR. WAGNER:  Thank you.

8           THE COURT:  I begin, Miss Bosman, with three

9   general observations about my following remarks, which I

10  promised you I would provide you at an appropriate time.

11          Number one, this is the appropriate time because I

12  did not want to interfere with either attorneys' attention

13  to their case by dealing with collateral matters during

14  trial.

15          Two, if the Circuit's called upon to review the

16  record of these proceedings, they should understand the

17  environment within which my orders were issued and my

18  rulings were made.

19          And three, and most importantly, if a Judge is

20  having difficulty with an attorney, it's my view the Judge

21  should directly confront the attorney with those

22  difficulties and give them an opportunity to respond, if

23  they care to.  Too many judges do not do that.

24          With those observations in mind, let me share with

25  you the following observations:

                    *THERESA J. CASAL, RPR, CRR*
                *UNITED STATES DISTRICT COURT — NDNY*

*Deliberations*

1            This is the first time you have appeared before

2     me.  It's my view you are an intelligent and capable trial

3     attorney; you fully understand the issues, you fully

4     understand my orders and you fully understand my rulings.

5     In your opening statement, in your closing argument and when

6     called upon to articulate or comply with foundational

7     requirements of some evidentiary rule, you have demonstrated

8     admirable ability to advocate on behalf of your client.  In

9     this context, I make the following observations:

10            When I have issued orders and made rulings, you

11    have frequently feigned a lack of clarity or

12    misunderstanding and sought to forge forward with whatever

13    you wanted to do, regardless of those orders and rulings.  I

14    pointed out an example of that on the record this week when

15    you continually objected to the admissibility of evidence I

16    ruled inadmissible.  You first told me that I misunderstood

17    the nature of your objection, citing compound questions as

18    the rationale for those prior objections and then you

19    promptly proceeded to do exactly what I told you you were

20    doing as the examination proceeded.  The record, of course,

21    will speak for itself in that regard.

22            As another example, you caused significant delays

23    in this trial by failing to abide by my orders regarding

24    designation of prior testimony and soliciting evidentiary

25    rulings about the issues that arose.  During various

*Deliberations*

1   discussions of legal matters, you intentionally obfuscated

2   the issues, you failed to respond to direct inquiries and

3   intentionally sought to divert the Court's attention with a

4   view toward pressing forward with your own views about what

5   is legally permissible in this case.

6          I have serious questions, although I'm not making

7   any factual finding, about whether you intentionally

8   attached two pages of documents concerning matters I ruled

9   inadmissible to an exhibit offered during a first trial and

10  attempted to circumvent my ruling on admissibility.

11         I have serious questions about your penchant of

12  continuing pressing legal issues that I have resolved

13  adversely to you.  In essence, I have serious questions

14  about your behavior during these proceedings.

15         In the end, Miss Bosman, I am not the only judge

16  in the district who has seen this behavior.  You asked me

17  what I was talking about when this issue first arose, you

18  asked me what I was talking about, and I told you I would

19  tell you at an appropriate time.  This is an appropriate

20  time.

21         The underlying record of the first trial before

22  Judge McAvoy reflects that he had the same issues, and it

23  served as the basis for his recusal on this retrial.  He

24  didn't want to deal with it and you again.  The case

25  returned to the wheel and was spun three times, with two

*Deliberations*

1    intervening recusals by other judges for similar reasons

2    before it landed on my doorstep.

3           Let me assure you, Mr. Miller, since you're

4    present for this dissertation, that nothing that I have just

5    said has had any impact on what I believe were my best

6    efforts to be fair and reasonable in my resolution of the

7    issues that have arisen during these proceedings.  In other

8    words, these observations, especially given my jury

9    instructions, have had no adverse effect on you and your

10   case whatsoever.

11          Finally, Miss Bosman, I'm not proposing to do

12   anything at this juncture other than to directly tell you

13   what I believe about my observations and about your behavior

14   and the fact that it's unacceptable.  I don't expect to ever

15   see these things again during any appearance before me.  You

16   are now on notice.

17          You may respond if you care to, though by no means

18   are you obligated to.

19          MS. BOSMAN:  May I respond in writing, your Honor?

20          THE COURT:  You may.

21          MS. BOSMAN:  Thank you.

22          THE COURT:  All right.  Thank you.

23          MR. WAGNER:  Thank you.

24                  (Court recessed to await the verdict at

25                  11:38 AM.)

*Verdict*

 1                    (Court reconvened at 2:13 PM.)

 2          THE COURT:  We have a verdict.  Go ahead, John,

 3  bring the jury out.

 4                    (Jury present.)

 5          THE COURT:  Be seated, please, folks.  Ladies and

 6  gentlemen, I have a verdict form presented by your

 7  foreperson that reads as follows:

 8          As to the 2009 beat assignments, what amount of

 9  damages do you award with respect to the City of Ithaca on

10  Mr. Miller's retaliation claim for those assignments?

11  $220,000.

12          On the issuance of the June 1, 2010, Notice of

13  Discipline, same question, with respect to damages in

14  connection with that, City of Ithaca, $220,000; Edward

15  Vallely, $30,000; John Barber, $10,000; Pete Tyler, $1.

16  Total damages on the June 1 claim, $260,001.

17          Is that your verdict, so say you all?

18                    (All respond affirmatively.)

19          THE COURT:  Anyone wishing the jury polled?

20          MR. WAGNER:  Your Honor, just with respect to the

21  division between beats and the NOD.

22          THE COURT:  All I intend to do is ask each one of

23  'em is -- I'm not talking about questioning the jury, I'm

24  talking about polling.

25          MR. WAGNER:  No, your Honor.

                    *THERESA J. CASAL, RPR, CRR*
                *UNITED STATES DISTRICT COURT - NDNY*

*Verdict*

1            THE COURT:  All right.  Miss Bosman.

2            MS. BOSMAN:  Could you reread that again, your

3    Honor, please?

4            THE COURT:  You have a copy of the verdict form?

5            MS. BOSMAN:  Yes, your Honor.

6            THE COURT:  The answer to the first question is

7    $220,000.

8            MS. BOSMAN:  Yes, your Honor.

9            THE COURT:  As to the second question, second

10   claim, City of Ithaca, 220,000; Edward Vallely 30,000; John

11   Barber, 10,000; Pete Tyler, $1.  Total damages on the second

12   claim, $260,001.  Do you wish the jury polled?

13           MS. BOSMAN:  No, thank you, your Honor.

14           THE COURT:  All right.  Ladies and gentlemen, that

15   concludes your service with the appreciation of the Court

16   and parties.  I know it's been a strenuous two weeks.  Any

17   of you, you're free to gather your things and free to go.

18   If you want to stay a few minutes, I'm happy to come back

19   and talk to you, but that's up to each of you whether you do

20   or don't.  But I'll be back there for any of you that

21   remain.  All right.  Thank you.

22                     (Jury excused.)

23           THE COURT:  Thank you.

24                     (Court adjourned at 2:17 PM.)

25                     - - - - -

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

CERTIFICATION OF OFFICIAL REPORTER


        I, THERESA J. CASAL, RPR, CRR, CSR, Official

Realtime Court Reporter, in and for the United States

District Court for the Northern District of New York, do

hereby certify that pursuant to Section 753, Title 28,

United States Code, that the foregoing is a true and correct

transcript of the stenographically reported proceedings held

in the above-entitled matter and that the transcript page

format is in conformance with the regulations of the

Judicial Conference of the United States.


        Dated this 20th day of February, 2015.


        **/s/ THERESA J. CASAL**

        THERESA J. CASAL, RPR, CRR, CSR

        FEDERAL OFFICIAL COURT REPORTER


*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT – NDNY*