**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CHRISTOPHER MILLER,**

                   **Plaintiff,**            **3:10-cv-597**
                                           **(GLS/DEP)**

       **v.**

**CITY OF ITHACA, NEW YORK et al.,**

                   **Defendants.**

_____

**APPEARANCES:**             **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Bosman Law Office             AJ BOSMAN, ESQ.
3232 Seneca Turnpike, Suite 15
Canastota, NY 13032

**FOR THE DEFENDANTS:**
Stokes, Roberts Law Firm      ANNE-MARIE MIZEL, ESQ.
903 Hanshaw Road           HAYDEN R. PACE, ESQ.
Ithaca, NY 14850             ARCH Y. STOKES, ESQ.
                               PAUL E. WAGNER, ESQ.

City of Ithaca                PATRICIA M. O'ROURKE, ESQ.
Office of the City Attorney
108 East Green Street
Ithaca, NY 14850

**Gary L. Sharpe**
**District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

This matter came before the court for a nine-day-long jury trial in January 2015.  (Dkt. Nos. 669-77.)  In the first phase of the trial, the jury found in favor of plaintiff Christopher Miller against defendant City of Ithaca, New York, on his beat assignment retaliation claim under both Title VII of the Civil Rights Act of 1964[1] and the New York Human Rights Law (NYHRL),[2] but found in favor of defendant Marlon Byrd on that claim.  (Dkt. No. 653.)  In the second phase of the trial, which required the jury to consider damages for the aforementioned beat assignment retaliation claim along with a retaliation claim under both Title VII and the NYSHRL related to the issuance of a Notice of Discipline (NOD) on June 1, 2010 — a claim for which liability was fixed by virtue of a prior jury's verdict — Miller was awarded a total of $480,001 in damages against the City and defendants Edward Vallely, John Barber, and Pete Tyler.  (Dkt. No. 661.)  Pending are defendants' motions for a stay, (Dkt. No. 666), for judgment as

---

[1] *See* 42 U.S.C. §§ 2000e-2000e-17.

[2] *See* N.Y. Exec. Law §§ 290-301.

a matter of law, or, in the alternative, for remittitur or a new trial, (Dkt. No. 678), and attorney's fees, (Dkt. No. 692), and Miller's motion for attorney's fees, (Dkt. No. 688). For the reasons that follow, defendants' motion for remittitur is granted, the remainder of defendants' motions are denied, and Miller's motion is held in abeyance.

## II.  Background

The facts of this case are well known to the court and the parties, and no factual discussion, separate from that included below, is necessary.

## III.  Discussion

### A.  Motion for Stay Under Rule 62(b)

Defendants moved for a stay of judgment pending the court's "consideration and disposition of post-trial [m]otions" pursuant to Rule 62(b), (Dkt. No. 666, Attach. 1 at 1), which permits the court to stay the execution of the judgment pending the disposition of motions brought under the authority of Rules 50, 52(b), 59, or 60, *see* Fed. R. Civ. P. 62(b). Notably, the motion was filed on an ordinary briefing schedule, and was not fully briefed until after defendants filed their post-trial motion under Rules 50 and 59. (Dkt. Nos. 666, 678, 682.) Because the court now disposes of that motion, the application for a stay is denied as moot.

## B. Motion Under Rules 50 and 59

Under Rule 50, "[j]udgment as a matter of law is proper when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *United States v. Space Hunters, Inc.*, 429 F.3d 416, 428 (2d Cir. 2005) (quoting Fed. R. Civ. P. 50(a)(1)). Rule 59(a)(1), however, permits the court to grant a new trial "when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (internal quotation marks and citation omitted). Rule 50 requires the court to "consider the evidence in the light most favorable to the party against whom the motion was made and . . . give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." *Space Hunters, Inc.*, 429 F.3d at 429 (internal quotation marks and citation omitted); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Space Hunters, Inc.*, 429 F.3d at 429 (internal quotation marks and citation omitted). Thus, a motion for

judgment as a matter of law may be granted only if "the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998).  Under Rule 59, the court is free to weigh the evidence and grant a new trial if the jury's verdict is against the weight of that evidence.  *See DLC Mgmt. Corp.*, 163 F.3d at 133.  With these principles in mind, the court turns to defendants' arguments.

    *1.    June 1, 2010 NOD*

Defendants again seek to attack the prior jury's finding in an argument very closely related to one previously addressed, (Dkt. No. 678, Attach. 1 at 2-4; Dkt. No. 572 at 5, 8, 10; Dkt. No. 583 at 3, 5-6), that relates to the Supreme Court's decision in *University of Texas Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), and its retroactive application to this case.  Defendants now point to case law, decided after the court's previous rulings, that they contend compels retroactive relief in terms of the prior jury's finding on liability for the June 1, 2010 NOD.  (Dkt. No. 678, Attach. 1 at 2-4.)

The case chiefly relied upon by defendants, *Xu-Shen Zhou v. State*

*University of New York Institute of Technology*, 592 F. App'x 41 (2d Cir. 2015), was of a meaningfully different procedural posture than the one at bar. The *Nassar* decision came down while the defendant's motion for judgment as a matter of law was pending. *Id.* at 42. The district court permitted the defendant to supplement its motion papers to include arguments regarding *Nassar*, but for reasons explained by the Second Circuit, remand was necessary. *Id.* at 42-43. *Cassotto v. Donahoe*, 600 F. App'x 4 (2d Cir. 2015), and *Sass v. MTA Bus Company*, 6 F. Supp. 3d 229 (E.D.N.Y. 2014), also relied upon by defendants, (Dkt. No. 678, Attach. 1 at 2, 3-4), was of the same posture as *Zhou*, *i.e.*, *Nassar* was decided while the post-trial motion was pending. *See Cassotto*, 600 F. App'x at 5.

Defendants' attempt to argue that "full retroactive effect" must be given to the *Nassar* decision in terms of the NOD-related jury finding, (Dkt. No. 678, Attach. 1 at 3 (internal quotation marks omitted)), is merely another effort to persuade the court to vacate the verdict left intact by Judge McAvoy. As the court has previously explained, and despite the unfortunate position in which defendants find themselves, there is simply no mechanism by which defendants can attack the prior jury verdict. The remaining arguments, which assume that the court will apply but-for

causation to the NOD-related claim, (*id.* at 4-6), are at odds with the foregoing conclusions and need not be addressed.  For all of the foregoing reasons, defendants' motion as it relates to the NOD claim is denied.[3]

### 2.    Beat Assignments

Defendants next submit that the jury's finding on the beat assignment claim — that the City is liable — is incompatible with its finding that Byrd, the sole decision maker, is not, and that the jury's finding of retaliatory intent is not supported by the evidence.  (*Id.* at 6-16.)  First, defendants argue that Miller offered no evidence "that the City, separately from . . . Byrd, had any role in assigning the disputed beats."  (*Id.* at 7.)  Referencing an email sent by Barber to Byrd on July 29, acknowledging "Barber's acceptance of Byrd's explanation of why he decided to change [Miller]'s beats," defendants assert that the beats at issue began five days before the email was even sent.  (*Id.*)

---

[3] Defendants' contention that *Mitsui Sumitomo Insurance Co., Ltd. v. Evergreen Marine Corp.*, 621 F.3d 215, 220 (2d Cir. 2010), requires retroactive application of *Nassar* in this case because the case remains "open on direct review," (Dkt. No. 686 at 1 (emphasis omitted) (internal quotation marks omitted)), is at odds with the court's previous analysis and decisions, (Dkt. Nos. 572, 583).  *Mitsui*, to the extent relied upon by defendants, cannot permit an attack on the first jury's verdict long after the time for seeking post trial relief has expired.  (Dkt. No. 572 at 7-9.)  Nor does a change in law constitute exceptional circumstances such that Rule 60(b)(6) relief is available.  (*Id.* at 9-10.)  For these reasons, the case — insofar as it concerns the first jury's liability finding for the June 1, 2010 NOD — is not "open on direct review," *Mitsui*, 621 F.3d at 220.

Defendants allege further that Miller failed to prove that Byrd knew about the complaints of discrimination in 2008 or 2009, and that, even if Byrd had knowledge of same, there was a failure by Miller to prove that the critical element in Byrd's decision to change the disputed beat assignments was Miller's complaints. (*Id.* at 8-9.)[4]  Defendants argue that knowledge alone is, by itself, insufficient to establish intent in any event; in particular, defendants claim Miller failed to offer any evidence to support his showing of retaliatory intent in the beat assingments made by Byrd. (*Id.* at 9-10.) Finally, in this vein, defendants speculate that the jury reached a compromise verdict by finding for Miller on the beat assignments claim as against the City because it "is unsupported by the evidence." (*Id.* at 14-16.)

To these arguments, Miller, who asserts that defendants' first assertion is really one challenging the verdict as inconsistent, contends that defendants have waived their right to object to the verdict on the beat

---

[4] Defendants also renew the argument, made during trial in support of their motion for a directed verdict, that the beat assignments "were not, as a matter of law, a 'material adverse action' upon which a finding of actionable retaliation can be based." (Dkt. No. 678, Attach. 1 at 10-14; Dkt. No. 647.)  The court previously rejected this argument, and, along the way, noted that the beat assignments claim hung "by a thread," (T: 713), when it denied defendants' written motion raising the issue, (Dkt. No. 663).  The court will not revisit its prior ruling although it recognizes that it is a close legal issue.

assignments as inconsistent or the result of a jury compromise by failing to raise those issues before the jury was discharged. (Dkt. No. 684 at 4-6.) Miller continues that, even if not waived, sufficient evidence was adduced to demonstrate the City's knowledge of Miller's protected activity, as well as causation, which is supported by the close temporal proximity of Miller's Human Rights conference on July 20, 2009 and the change to the Commons beat on July 23 as well as the "shifting explanations for assigning [Miller] to the Commons or Collegetown" beats. (*Id.* at 6-7, 10-14.)

Despite defendants' reply argument that the court "expressly advised [them] to defer Rule 50 motions and to reserve any motion for judgment NOV until after the case was completed" and that "the [c]ourt dismissed the jury before any argument could be heard, asking only if the parties wished the jury to be polled," (Dkt. No. 686 at 3 n.1), the court agrees with Miller that defendants have waived their right to challenge the verdict as inconsistent.[5] *See Anderson Grp., LLC v. City of Saratoga Springs*, 805

---

[5] Defendants repudiate their argument that the verdict as to the beat assignments is inconsistent in their reply. (Dkt. No. 686 at 3 ("The Verdict Against the City on the Beat Assignments is Deficient *Not Because It Is Inconsistent* with the Absolution from Liability of Lt. Byrd, But Because the Record is Devoid of Evidence to Support It." (emphasis added)).)

9

F.3d 34, 48 (2d Cir. 2015) (explaining that a party's failure to specifically object to the verdict on inconsistency grounds before the jury is excused constitutes waiver of the unraised issue, and specifically noting that the party is obligated to make its objection despite "the district court's speedy dismissal of the jury" and the possibility of "incur[ring] the judge's displeasure").  The waiver is limited, however, to a challenge on the grounds of inconsistency.  As explained below, the remainder of defendants' arguments are rejected.

While defendants waived their right to challenge the verdict on the beat assignments as inconsistent, they nonetheless make arguments about the sufficiency of the evidence as it relates to the finding of liability against the City.  The court is somewhat troubled by what seems like an end-around the waiver issue.  Indeed, whether the evidence adequately supports the verdict seems inextricably tied to what defendants intimate is inconsistent about the verdict: the jury could not have competently found both that Byrd was not liable and the City was on the beat assignments claim.  Despite the lack of assistance from the parties on the issue, it is appropriate in such instances to consider the proof broadly without limiting the sufficiency of the proof to only that evidence that can be squared with

the alleged inconsistency in the verdict. *See Lavoie v. Pac. Press & Shear Co., a Div. of Canron Corp.*, 975 F.2d 48, 57 (2d Cir. 1992). In other words, the court must proceed by considering whether the evidence is sufficient as against the City notwithstanding the jury finding absolving Byrd of retaliating. With that background in mind, the court turns to defendants' allegations.

Defendants' first argument, that Miller failed to offer any evidence "that the City, separately from . . . Byrd, had any role in assigning the disputed beats," (Dkt. No. 678, Attach. 1 at 7), fails to appreciate that the jury's verdict as to Byrd does not control the court's view of the proof in light of defendants' waiver. Viewing the evidence in the light most favorable to Miller, as the court must under Rule 50, the evidence was sufficient to show that the City, acting through Byrd, retaliated by assigning the disputed beats. It is important to note that the City stipulated that Miller's July 20, 2009 Human Rights complaint constituted protected activity and that it was on notice of the complaint. (T: 193.) The only elements that Miller needed to prove, in light of the stipulation, were that: (1) the City took adverse action against him; and (2) "a causal connection exist[ed] between the protected activity and the adverse action."

*Malacarne v. City Univ. of N.Y.*, 289 F. App'x 446, 447 (2d Cir. 2008).  As previously mentioned, the court has ruled that the change in beats constitutes adverse action, *see supra* note 4, which leaves only the issue of causation for discussion.

Causation can be elusive in cases involving claims of retaliation and, as such, may be proven "indirectly by showing that the protected activity was closely followed in time by the adverse employment action."  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012) (internal quotation marks and citation omitted).  In addition to the temporal proximity of the protected activity and following adverse action, a plaintiff may prove causation "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  Indeed, "[f]rom such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason."  *Id.* (citations omitted).

Here, Miller offered sufficient evidence of causation.  While Byrd denied knowing that Miller had filed the Human Rights complaint at issue at the time he made the change in Miller's beat assignments on July 23 —

just three days after Miller filed that complaint — several witnesses testified that the complaint was posted on a bulletin board in the patrol room at the police station by one of Byrd's subordinates just a few days before the change. (T: 170-71, 193, 249, 379, 644, 671, 672, 681-82, 904, 919.) Miller also testified that, in advance of the Human Rights conference held on July 20, he sought approval from Byrd to take time off and specified that he needed time off to attend that Human Rights conference. (T: 384.)

A fair view of the evidence also shows that the City offered inconsistent explanations for the change in Miller's beat assignments. As told by Byrd, the change was precipitated by community complaints involving Miller and his failure to get approval before leaving his beat assignment on a particular day. (T: 609, 613, 619-32.) Valerie Saul, deputy director of human resources for the City, testified that she spoke to Chief Vallely about how the Department made beat assignments. (T: 271-76.) A letter of October 15, 2009 from Saul to Miller indicates that the change in Miller's beats "was not retaliatory," and that "Chief Vallely is committed to a policy of rotating officers through the different beats, so that each officer is familiar with all areas of the City and all of the beats." (Pl.'s Ex. 33.) Byrd and Saul's explanations are at odds with one another.

The very close temporal proximity between Miller's July 20 complaint and the change in his beat assignments only three days later, along with the "shifting and somewhat inconsistent explanations for" Miller's new beat assignments, collectively carried Miller's burden of proving a causal connection. *Zann Kwan*, 737 F.3d at 846. Viewed under either the Rule 50 or Rule 59 standard, the court will not disturb the jury's finding as to liability.

3.    *Damages*

Defendants next seek relief in an argument that claims that the jury verdict on the June 1, 2010 NOD is defective because Miller failed to prove that the City caused any damages separate from any individual defendant. (Dkt. No. 678, Attach. 1 at 16-18.) Defendants speculate that the jury tagged the City with the largest allocation of damages because it was "a 'deep pocket'" and that the verdict in this regard also resulted from jury compromise. (*Id.* at 17-18.) Defendants assert that the jury's award of damages is "unsupported by the evidence, shocks the conscience and should be remitted." (*Id.* at 18-25.) Defendants contend that Miller failed to show damages flowing from the retaliation at issue was distinct from any injuries suffered from his lawful discharge. (*Id.* at 19.) In an effort to

14

persuade the court in this regard, defendants claim that Miller "bamboozled" his own caregivers, and that he admitted as much during trial.  (*Id.* at 19-22.)  With respect to remittitur, defendants argue that an award of $480,001 "for emotional distress alone [based on suspect evidence] 'deviates substantially' from the norm and cannot be upheld." (*Id.* at 22-25.)

In opposition, Miller argues that "[d]efendants failed to preserve their argument that the evidence was insufficient to prove causation," and that "[c]ausation was proven in any event."  (Dkt. No. 684 at 15-20.)  As to waiver, Miller asserts that defendants' failure to seek judgment as a matter of law during the damages phase of the trial prohibits them from seeking same now.  (*Id.* at 15-16.)  On the issue of remittitur, Miller claims that the trial evidence amply supports the jury's verdict and that it is not excessive. (*Id.* at 16-20.)

As an initial matter and on logic similar to that discussed above in terms of waiver, *see supra* Part III.B.2, by failing to seek judgment as a matter of law at any point after the damages phase of the trial, defendants have waived their right to challenge the damages verdict insofar as it relates to evidentiary shortcomings.  *See Wright v. Wilburn*, 194 F.R.D. 54,

63 (N.D.N.Y. 2000); *see also* Fed. R. Civ. P. 50(a)(1) (acknowledging that the gravamen on a Rule 50 motion is whether "a reasonable jury would . . . have a legally sufficient evidentiary basis to find for the party on [a particular] issue").  Moreover, the court discerns no reason to overlook defendants' default; indeed, the only argument advanced by defendants on this issue — the already-rejected excuse that "the [c]ourt dismissed the jury before any argument could be heard," (Dkt. No. 686 at 3 n.1) — is insufficient to overcome waiver.  *See Anderson Grp.*, 805 F.3d at 48.  In light of the foregoing, the only issue that the court need address with respect to the damages verdict is whether remittitur is appropriate.[6]

If the trial court finds that a verdict is excessive, it is within the province of the court to order remittitur, which "is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial."  *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir. 1990) (internal quotation marks and citation omitted).  "It is not[, however,] among the powers of the trial court, where the jury has

---

[6] Notably, the court does not discern an argument by defendants under Rule 59 on the issue of damages.  If such an argument had been raised, defendants' waiver for failure to seek judgment as a matter of law would not impact the court's consideration of a motion for a new trial.  *See Giles v. Rhodes*, 171 F. Supp. 2d 220, 224-25 (S.D.N.Y. 2001).

awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial." *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995). A verdict is "excessive" if "it shocks the judicial conscience or compels the conclusion that it was the result of passion, prejudice and/or sympathy, or is otherwise so unreasonable that it would be unconscionable to permit it to stand." *Weldy v. Piedmont Airlines*, No. 88-CV-0628E(M), 1995 WL 350358, at *3 (W.D.N.Y. May 30, 1995) (citations omitted). In making a determination as to excessiveness, the court "is free to weigh the evidence and 'need not view it in the light most favorable to the verdict winner.'" *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634-35 (2d Cir. 2002) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998)).

Bearing on the question of what constitutes an excessive award, Title VII caps compensatory damage awards in a case such as this at $300,000. *See* 42 U.S.C. § 1981a(b)(3)(D). New York law simultaneously requires courts to review an allegedly excessive award of damages on a claim brought under that state's law by considering whether the award "deviates materially from what would be reasonable compensation." N.Y. C.P.L.R. 5501(c). The New York "standard is less deferential to a jury verdict than

the federal . . . standard." *Rainone v. Potter*, 388 F. Supp. 2d 120, 124

(E.D.N.Y. 2005). To fairly determine whether an award is excessive under

either standard, the court must look to verdicts in similar cases. *See*

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 425 (1996); *MacMillan*

*v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 560 (S.D.N.Y. 2012).

A three-tiered framework for gauging the excessiveness of emotional

damage awards has been routinely applied in this Circuit. *See Rainone*,

388 F. Supp. 2d at 122-23; *see also MacMillan*, 873 F. Supp. 2d at 560.

Each of the categories, which are dictated by the relative seriousness of

the emotional harm, recognizes a permissible range of awards. The first

category, for the least severe "garden variety" emotional distress claims,

merits awards in the range of $30,000 to $125,000. *MacMillian*, 873 F.

Supp. 2d at 561. Garden variety claims are typically supported by only the

plaintiff's testimony, which lacks a great deal of specificity. *See Rainone*,

388 F. Supp. 2d at 122. The mid-level category for "significant" emotional

distress claims warrants awards in the approximate range of $100,000 to

$500,000. *See Thorsen v. Cty. of Nassau*, 722 F. Supp. 2d 277, 293

(E.D.N.Y. 2010); *Miller v. City of Ithaca*, 914 F. Supp. 2d 242, 252

(N.D.N.Y. 2012) (citing *Menghi v. Hart*, 745 F. Supp. 2d 89, 108 (E.D.N.Y.

18

2010)).  Significant claims "are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony or evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses." *Rainone*, 388 F. Supp. 2d at 122-23.  Because the third and final category, for the most egregious claims, is not implicated, it need not be discussed.

Here, the jury's verdict of $220,000 on the beat assignments claim is excessive, and Miller must choose to either accept a lesser amount or a new trial on damages on that claim.  On the other hand, the jury's verdict of $260,001 on the NOD-related claim is not excessive.  During the second phase of the trial, Miller offered evidence bearing on the emotional harm he suffered as a result of defendants' retaliatory conduct.  The damages evidence included the testimony of Miller and other witnesses, including certain medical professionals with whom Miller treated after he was served with the NOD on June 1, 2010.  (T: 1026, 1105, 1160.)  To summarize, Miller offered proof that, as a result of defendants' liable conduct, he suffered sleeplessness, hypervigilance, depression, anger, erectile dysfunction, agoraphobia, aniexty, panic attacks, incontinence, shaking, headaches, fearfulness, weight loss, and drinking problems.  (T: 947-54,

958.)  He sought medical treatment and was prescribed medication in connection with his symptoms.  (T: 1031-32, 1161.)  Miller's treatment before he was served with the June 1, 2010 NOD was limited and described with little detail.  (T: 940-43.)

While the evidence tends to move this case into the "significant" category of emotional distress claims with respect to the NOD, Miller's own testimony demonstrates that he suffered minimal symptoms as a result of the beat assignments change.  When asked whether his symptoms were attributable to both the change in his beat assignments and the issuance of the NOD, referred to by Miller as the "Notice of Termination," Miller testified:

> I had had stress from the constant things that they did to me, and then the Notice of Termination was just -- it was like the nail in the coffin that just was the worst thing ever.  I knew that they had -- as they said, tryin' to force me out one way or another, but I never thought that they would stoop to that level of retaliation.

(T: 957-58.)  Miller's testimony clarified that the harm from the beat assignments change was "drastically different" from that of the NOD, with the former being less severe because he "still knew [he] had a job, still was workin', [he] had everything that [he] needed, so to speak, in terms of takin'

care of [his] family." (T: 963.) Miller explained that he "had some problems from when" his beats were changed, "[b]ut [he] was dealin' with it." (T: 958.) Additionally, Miller claimed that he started to feel the effects of the beat assignments change on the night of July 20, which impossibly predated the change to his beats by three days. (T: 919.) Miller's subjective testimony about the seemingly minimal effect that the change in beats had on him places the verdict as to that claim into the garden variety category.

As mentioned above, the jury awarded Miller $220,000 on the beat assignments claim, which is nearly $100,000 more than the upper limit for claims of that ilk. *See MacMillian*, 873 F. Supp. 2d at 561 (explaining that garden variety emotional distress claims are valued in the range of $30,000 to $125,000). Because the "court is convinced that the jury's award is entirely out of proportion to [Miller]'s injury, and was motivated by sympathy rather than by evidence of harm, remittitur is the appropriate remedy." *Id.* at 560-61 (internal quotation marks and citation omitted). Because $50,000 represents "'the maximum amount that would be upheld by th[is] court as not excessive,'" *Lore v. City of Syracuse*, 670 F.3d 127, 180 (2d Cir. 2012) (quoting *Earl v. Bouchard Trans. Co.*, 917 F.2d 1320, 1330 (2d

Cir. 1990), the court orders a new trial solely on the issue of damages on the beat assignment claim unless Miller agrees to accept remittitur of the jury's $220,000 compensatory damages award to $50,000 within fourteen (14) days of the date of the Memorandum-Decision and Order.

In contrast to the beat assignments, the jury's verdict on the NOD is not excessive.  The evidence of emotional harm to Miller, as summarized above, demonstrates a classic, but not overwhelmingly strong, case of "significant" emotional distress, which the jury's award, near the lower end of the range of damages for such a claim, adequately compensated.  For the foregoing reasons, the jury's verdict on the NOD retaliation claim will not be disturbed.

## C.    <u>Attorneys Fees</u>

Finally, the court addresses the parties' applications for attorneys fees.  (Dkt. Nos. 688, 692.)  Beginning with defendants' motion, on behalf of five individual defendants — Scott Garin, Andrew Navarro, Lauren Signer, Byrd, and Tyler — they seek $333,512.69 in fees, relying on 42 U.S.C. § 2000e-5(k) as the legal basis for such an award.  (Dkt. No. 692, Attach. 1 at 13, 18; Dkt. No. 692, Attach. 4 at 1.)  Despite other shortcomings in their request, fundamentally, as Miller argues, § 2000e-

5(k) cannot serve as a valid basis for fees against the named individual defendants. Each of those defendants was susceptible to liability under legal authority distinct from Title VII "[b]ecause Title VII does not impose liability on individuals." *Lore*, 670 F.3d at 169. Accordingly, the court need not pass upon the more exacting analysis of whether Miller's claims as against these particular defendants were frivolous, unreasonable, or otherwise without foundation.

In light of the court's remittitur order, it will not pass upon Miller's motion for attorney's fees, (Dkt. No. 688), at this juncture, recognizing that Miller's election to proceed to a new trial on damages for the beat assignment claim will result in additional fees. Miller's motion is therefore held in abeyance pending his election on the remittitur issue.

## IV. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for a stay (Dkt. No. 666) is **DENIED AS MOOT**; and it is further

**ORDERED** that defendants' motion for judgment as a matter of law, or, in the alternative, for remittitur or a new trial (Dkt. No. 678) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** to the extent that the court orders a new trial solely on the issue of damages on the beat assignment claim unless Miller agrees to accept remittitur of the jury's $220,000 compensatory damages award to $50,000 within fourteen (14) days of the date of the Memorandum-Decision and Order; and

**DENIED** in all other respects; and it is further

**ORDERED** that defendant's motion for attorney's fees (Dkt. No. 692) is **DENIED**; and it is further

**ORDERED** that Miller's motion for attorney's fees (Dkt. No. 688) is held in abeyance pending Miller's election as to remittitur; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 17, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge