**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTOPHER MILLER,**

                 **Plaintiff,**

                 v.

**CITY OF ITHACA, NEW YORK
et al.,**

                 **Defendants.**

**3:10-cv-597
(GLS/DEP)**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Bosman Law Firm, LLC<br>201 West Court Street<br>Rome, NY 13440 | AJ BOSMAN, ESQ. |
| **FOR THE DEFENDANTS:** | |
| Stokes, Roberts Law Firm<br>858 Kennebec Street<br>Pittsburgh, PA 15217 | ANNE-MARIE MIZEL, ESQ. |
| Stokes, Wagner Law Firm<br>3593 Hemphill Street<br>Atlanta, GA 30337 | HAYDEN R. PACE, ESQ. |
| Stokes, Roberts Law Firm<br>1201 W. Peachtree Street, Suite 2400<br>Atlanta, GA 30309 | ARCH Y. STOKES, ESQ. |
| Stokes, Roberts Law Firm<br>903 Hanshaw Road<br>Ithaca, NY 14850 | PAUL E. WAGNER, ESQ. |

**Gary L. Sharpe**
**Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Pending is plaintiff Christopher Miller's motion for attorney's fees in the amount of $937,430.38 and expenses in the amount of $41,430.41. (Dkt. Nos. 750, 778.) Defendants City of Ithaca, New York, Edward Vallely, John Barber, and Pete Tyler move pursuant to Federal Rule of Civil Procedure 62(b)[1] for a stay of the execution of the judgment during their appeal. (Dkt. No. 768.) For the reasons explained below, Miller's motion for fees and expenses is granted in part and denied in part, and defendants' motion for a stay is granted.

## II. Background

Too much ink has already been spilled in this matter, but the court is nonetheless compelled to take notice of the following facts that bear on Miller's motion for attorney's fees and put the case in perspective. This

---

[1] Defendants appear to have mistakenly identified Rule 62(b), which is concerned with stay pending the disposition of a motion, as the basis for the relief they seek. (Dkt. No. 768 at 1.) As discussed below, *see infra* Part III.B, the authority apparently invoked is the court's inherent power to stay the execution of a judgment without any security. *See Nken v. Holder*, 556 U.S. 418, 421 (2009).

litigation, which has been marred by extreme contentiousness, the brunt of which is attributable to the conduct of Miller's attorney, AJ Bosman, commenced in mid-2010. (Dkt. No. 1.) The operative pleading — the third filed — included twelve separate causes of action against eight named defendants and other unnamed defendants. (2d Am. Compl. ¶¶ 116-52, Dkt. No. 88.) Those claims were for discrimination and retaliation under Title VII[2] and the New York Human Rights Law (NYHRL),[3] constitutional violations under 42 U.S.C. § 1983, discrimination and retaliation under 42 U.S.C. § 1981, conspiracy pursuant to § 1983, and for a violation of the New York State Constitution. (*Id.*) Only three claims, all alleged pursuant to Title VII and the NYHRL survived for trial: race-based discrimination, retaliation related to Miller's beat assignments, and retaliation related to the June 1, 2010 notice of discipline. (Dkt. No. 495 at 33.) The matter was tried before the Honorable Thomas J. McAvoy in September 2012; it took a month to complete and the jury awarded Miller $2,000,004 on the retaliation claims, but found no cause of action with respect to discrimination. (Dkt. Nos. 423, 453, 454.) Judge McAvoy granted a

---

[2] *See* 42 U.S.C. §§ 2000e-2000e-17.

[3] *See* N.Y. Exec. Law §§ 290-301.

3

posttrial motion for a new trial on the beat assignment retaliation claim, which consequentially upset the jury's general damages verdict and required a new trial on liability for the beat assignment claim and damages for the retaliation claim related to the June 1, 2010 notice of discipline. (Dkt. No. 528 at 20.)

The matter was thereafter reassigned to this court. (Dkt. No. 554 at 4.) Additional motion practice ensued, (Dkt Nos. 558, 573), and, eventually, the case came to trial again. The second trial resulted in a total verdict of $480, 001. (Dkt. No. 661.) Following that trial, the court ordered a new trial on damages unless Miller would agree to accept $50,000 on his beat assignment retaliation claim. (Dkt. No. 697 at 24.) Miller opted to take his chances and was awarded only $20,000 at the conclusion of the third trial on that claim. (Dkt. No. 745.) The instant motions were subsequently filed, along with others of which the court previously disposed. (Dkt. Nos. 750, 751, 759, 767, 768.)

### III. Discussion

**A.  Attorney's Fees and Expenses**

Miller seeks "[a]n upward adjustment" of attorneys fees for "extraordinary success . . . in this extremely difficult case" and "to insure

4

attorneys who are willing to invest their time, energy and money, and to forego immediately paying work, are compensated in a meaningful way." (Dkt. No. 750, Attach. 1 ¶ 9.)  Nowhere in the motion does Miller specify the total hours expended in the case, by whom and at what rate, nor does he provide a grand total of the fee justified by Bosman's billing records. This failure has forced the court to undertake a task that can only be described as onerous at best.  The court concludes, although without absolute certainty based on the aforementioned deficiencies, that Miller seeks "[a]n upward adjustment" of $937,430.38 in fees and $41,430.41 in expenses.  (Dkt. Nos. 750, 778.)

In opposition to Miller's request, defendants argue that: (1) no fees, or "dramatic[ally] reduc[ed]" fees, should be awarded for the limited success obtained on Miller's behalf; (2) in light of the third jury's verdict and the remittitur order, Miller should not recover any fees related to the third trial; (3) the rates sought are unreasonable, unsupported by any evidence, and out-of-line with prevailing fees in this District; (4) poor record keeping and inadequate documentation do not support the requested fee; and (5) any award should be offset by the fees incurred by defendants because of Miller's unreasonable pursuit of frivolous claims.   (Dkt. No. 760 at 2-14.)

5

As explained below, Miller is entitled to an award of attorney's fees, but not in the amount he seeks.

As relevant here, courts are empowered with the discretion to award a reasonable attorney's fee to the prevailing party in a Title VII action. *See* 42 U.S.C. § 2000e-5(k). While courts may enhance or reduce fees under certain circumstances, the lodestar method — the hours reasonably spent to conduct the litigation multiplied by a reasonable hourly rate — ordinarily yields a reasonable fee amount. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 552 (2010); *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. For example, an enhancement may be appropriate where "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted" or it "involves exceptional delay in the payment of fees." *Id.* at 555-56. On the other hand, "[a] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee

6

application." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citation omitted).

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In determining whether the requested hourly rate is reasonable, the Supreme Court has provided guidance on the kind of information that bears on the "prevailing market rate":

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The court is also within its discretion to rely on "its knowledge of the relevant market when determining the reasonable hourly rate." *McDonald*, 450 F.3d at 96-97 (citing *Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir.1987)). While there are no hard limits, in this

7

District, the prevailing rate for experienced attorneys with specialized expertise in handling particular matters is generally $225; a reasonable rate for associates, depending on whether they have more or less than four years of experience, is $150 and $120, respectively; and paralegals are deserving of a rate of $80.  *See generally C.H. Robinson Worldwide, Inc. v. Joseph Aiello & Sons, Inc.*, No. 1:15-CV-1321, 2016 WL 4076964, at *4 (N.D.N.Y. Aug. 1, 2016) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012); *Zhou v. SUNY Inst. of Tech.*, 08-CV-0444, 2014 WL 7346035, at *3 (N.D.N.Y. Dec. 24, 2014).

In making the fee determination, trial courts are granted "substantial deference." *Fox v. Vice*, 563 U.S. 826, 838 (2011).  "[R]ough justice," and not "auditing perfection," is the goal of fee shifting provisions.  *Id.*  Thus, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Id.*

The court is troubled by and skeptical of Miller's request for a variety of reasons.  Most problematic is the complete failure of Miller to identify the attorneys that worked on his case, other than Bosman, and their qualifications and experience.  Indeed the only affirmation in support of fees is Bosman's.  (Dkt. No. 750, Attach. 1.)  As an attachment to her

8

affirmation, Bosman included a copy of her résumé and provided some details that bear on her skill, experience, and reputation. (*Id.* ¶ 5; Dkt. No. 750, Attach. 2 at 195-96.) To substantiate her requested hourly rate of $275, she points to decisions on attorney's fees rendered in this District and argues that they lag behind what she claims is market rate for attorneys of her experience, education and skill. (Dkt. No. 750, Attach. 1 ¶ 7.) She also argues that the requested rate reflects the difficulty of litigating cases "of this nature" and intimates that the fee was driven up by "combative, obstructive and evasive defense tactics." (*Id.* ¶¶ 7, 9) What is starkly absent from Bosman's affirmation, however, is any explanation of the qualifications of the other attorneys who worked on the case. Bosman merely claims that the requested rate of $200 for her "associates" is reasonable without more. (*Id.* ¶ 8.) As with the associate attorneys, Bosman summarily asserts that the $100 hourly rate sought for work performed by paralegals is reasonable. (*Id.*)

First, defendants' arguments that no fee, or a reduced fee, should be awarded for limited success, (Dkt. No. 760 at 2-6), is rejected. Although there were a multitude of claims that did not survive until trial, the success ultimately obtained cannot fairly be categorized as limited, and the claims

9

all stem from series of related facts.  *See Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992).  Defendants argument against fees related to the third trial, (Dkt. No. 760 at 6-7), are likewise rejected.  While the court is appreciative of the point made by defendants that Miller unnecessarily caused additional fees in connection with the third trial, the analogy to a Rule 68 Offer of Judgment is inapt.  Foolish as it may have eventually appeared, Miller was entitled to forego, as he did, the remittitur in favor of a third trial on damages for the beat assignment claim.  Had Miller achieved greater success than the remittitur amount in the third trial, it may have anecdotally strengthened his position on appeal as to certain issues.

As referenced above, a reasonable hourly rate in this case for Bosman's time is $225.  As for the associate attorneys, the court is left entirely unable to discern what a reasonable hourly rate would be in light of Miller's failure to provide any information that bears on the experience and qualifications of those lawyers.  As such, the prevailing rate for less experienced associates, $120, is the only assuredly reasonable rate here.  Finally, Miller has offered no reason to depart from the prevailing rate of

$80 per hour for paralegals.[4]

When lumped together by category, Miller claims that Bosman spent 1978.79 hours in this litigation, the associate attorneys, 848.50 hours, and paralegals, 2401.86 hours. (Dkt. No. 750, Attach. 2 at 191; Dkt. No. 750, Attach. 5 at 10; Dkt. No. 778 at 3, 17.) Defendants point out several bases for a downward adjustment of the hours billed. (Dkt. No. 760 at 9-14.) Among other things, it is true that the bill was driven up by "self-inflicted wounds," particularly during the discovery phase, and the behavior of Miller's counsel throughout the entirety of the litigation, which was, at times, abysmal. (*Id.* at 12; Dkt. No. 677 at 49-52.) The court is in agreement that the hours billed are unreasonable for the reasons offered by defendants.[5] Instead of engaging in an interminable review of the billing records and making a corresponding reduction to the hours in line-by-line fashion, the more sane approach is to simply impose a percentage

---

[4] There is one obvious outlier. Again, because Miller has failed to identify anyone other than Bosman as having worked on this matter on his behalf, the court is uncertain as to who "LKT" is, but that individual was billed at a rate of $75 for 27.29 hours. (Dkt. No. 750, Attach. 2 at 191.) Regardless of that individual's experience and skill, the hourly rate billed is a tolerable rate for even a paralegal and will not be adjusted.

[5] Notably, in a submission ordered by the court to help it make some sense of Miller's billing records, he "corrected some errors," which resulted in a decrease in fees, largely stemming from a single entry. (Dkt. No. 778 at 1; compare Dkt. No. 750, Attach. 2 at 141, *with* Dkt. No. 778 at 11.) However, the great majority of "corrections" were in Miller's favor. (*Compare* Dkt. No. 750, Attach. 2 at 6, 12, 22, 23, 42, 112, *with* Dkt. No. 778 at 5-10.)

11

reduction on the lodestar.  *See McDonald*, 450 F.3d at 96.

At the hourly rates previously specified, $225, $120, and $80 and the billed hours of 1,978.79, 848.5, and 2,374.57, the lodestar before adjustment is $739,060.10.[6]  The court's overall sense of the case, including Miller's "self-inflicted wounds" warrants a one-third reduction, yieldind a total fee award of $492,706.73.

The court now turns to Miller's request for $41,430.41 in expenses. (Dkt. No. 750, Attach. 2 at 163, 167, 193; Dkt. No. 750, Attach. 5 at 10; Dkt. No. 778 at 17.)  Defendants only argument in opposition is that Miller should have filed a bill of costs "as required by the Federal Rules."  (Dkt. No. 760 at 13.)  While defendants are correct that, in this District, the prevailing party in civil litigation must seeks costs by filing a bill of costs within thirty days of entry of judgment, *see* N.D.N.Y. L.R. 54.1(a), technical compliance may be excused under certain circumstances, *see Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, No. 09 Civ. 2570, 2009 WL 5173787, at *4 (S.D.N.Y. Dec. 30, 2009), *aff'd*, 428 F. App'x 97 (2d Cir.

---

[6] As mentioned above, *see supra* note 4, 27.29 hours were billed at the lower rate of $75 and have been excluded from the hours billed at the $80 rate for paralegal time. However, the fee generated by those 27.29 hours have been added back into the total pre-adjustment lodestar.

2011). More importantly, however, "[e]xpenses recoverable under Title VII are not limited to the costs taxable by 28 U.S.C. § 1920." *Dotson v. City of Syracuse*, No. 5:04-CV-1388, 2011 WL 817499, at *33 (N.D.N.Y. Mar. 2, 2011) (citation omitted). In fact, "expenses" include "[o]ut-of-pocket costs that are normally charged to clients . . . , even when such disbursements fall outside of 28 U.S.C. § 1920." *Id.* A review of the documentation suggests that the expenses were incidental and necessary to the prosecution of the case. However, for similar reasons as explained above, they are reduced by the same measure that fees were reduced. *See id.* (citing *Kim v. Dial Serv. Int'l, Inc.*, No. 96 CIV. 3327, 1997 WL 458783, at *20 (S.D.N.Y. Aug. 11, 1997)). Accordingly, Miller is entitled to expenses in the amount of $27,620.27.

**B.** **<u>Stay</u>**

Rule 62 of the Federal Rules of Civil Procedure is a codification of procedural rules that govern stay of proceedings to enforce a judgment. As relevant here, the rule does not expressly permit a stay of judgment *without bond* on appeal where the appealing party is other than the United States, although it does allow for an appeal *with a supersedeas bond*. *See* Fed. R. Civ. P. 62(d). "While Rule 62 outlines the mechanism for how a

13

stay may be obtained while an appeal is pending, it does not limit the district court's inherent power to issue a stay in a manner that does not fall within the scope of the Rule." *Hizam v. Clinton*, No. 11 Civ. 7693, 2012 WL 4220498, at *2 (S.D.N.Y. Sept. 20, 2012). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). That discretion may be triggered upon satisfaction by the movant of the following factors, the first two of which "are the most critical":

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Here, defendants argue that permitting execution of the $280,004 judgment — which will be paid out of City of Ithaca coffers — to proceed will "burden . . . the City's right to appeal, and will burden the city taxpayers and potentially prevent the City from providing for public functions to which its budget had already been allocated." (Dkt. No. 768 at 2.) In support of the notion that Miller will not be harmed by the issuance of a stay,

14

defendants contend that the City of Ithaca is solvent with a high grade bond rating, and it is obligated by New York law to pay its debts before any expenditures. (*Id.* at 2-3.)

Notably absent from defendants submission is any argument about their likelihood of success on appeal. Having presided over two trials and disposed of several motions, the court cannot begin to guess how this case may play out on appeal. Accordingly, the first factor weighs against issuance of a stay. Defendants have not done much better to convince the court that the City will be irreparably harmed absent a stay. While it is doubtless true that satisfaction of the judgment will have some impact on the City's budget, defendants have only suggested that satisfaction of the judgment will require "the City . . . to allocate funds that were previously intended for providing services in order to meet that debt." (Dkt. No. 768, Attach. 1 ¶ 5.) This factor also weighs against defendants. The court is satisfied that substantial injury to Miller will not be caused by the issuance of the stay and, therefore, the third factor tips in favor of granting defendants' request. Finally, the last factor, dealing with the public interest, is a close call. On the one hand, the citizens of the City of Ithaca may be deprived of some "public functions," and, on the other, there is a

15

more generic public interest in the satisfaction of judgments for violations of labor and employment laws. While the court tends to side with the more tangible interests of the City of Ithaca taxpayers, the factors on balance do not support issuance of a stay without bond.

In any event, the court will dispense with the bond requirement because there is virtually no probability that the City will be unable to satisfy the judgment after appeal. *See In re Nassau Cty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir.2015) (setting forth additional criteria to consider in dispensing with the bond requirement that seek to "ensure recovery for a party who ultimately prevails on appeal, and to protect the judgment creditor from the risk of losing money if the decision is reversed [on appeal]"). For all of these reasons, defendants' motion for a stay. (Dkt. No. 768), is granted.

## IV. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Miller's motion for attorney's fees, costs, and disbursements (Dkt. Nos. 750, 778) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    **GRANTED** to the extent that attorney's fees in the amount of

$492,706.73 and expenses in the amount of $27,620.27 are imposed against defendants the City of Ithaca, New York, Edward Vallely, John Barber, and Pete Tyler; and

**DENIED** in all other respects; and it is further

**ORDERED** that defendants' motion for a stay without bond (Dkt. No. 768) is **GRANTED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 5, 2017
Albany, New York

*Gary L. Sharpe*
U.S. District Judge