UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER MILLER,

                          Plaintiff,               3:10-cv-00597 (BKS/DEP)

v.

CITY OF ITHACA, NEW YORK, et al.,

                          Defendants.
_____

**Appearances:**

*For Plaintiff:*
A.J. Bosman
Bosman Law Firm LLC
201 W. Court Street
Rome, NY 13440

*For Defendants:*
Paul E. Wagner
Stokes Wagner, ALC
903 Hanshaw Road
Ithaca, NY 14850

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       This case has been litigated for almost a decade.[1] After three jury trials, Plaintiff Christopher Miller, a former police officer working for the City of Ithaca, prevailed on his Title VII retaliation claims against the City of Ithaca and certain individual defendants. On September 7, 2016, the Court entered a final amended judgment for Plaintiff in the amount of $280,001,

---

[1] It has been assigned to three United States District Court Judges: Senior Judge Thomas J. McAvoy, Senior Judge Gary L. Sharpe, and the undersigned.

including $20,000 against the City of Ithaca on Plaintiff's beat-assignment retaliation claim and $260,001 against the City of Ithaca, Edward Vallely, John Barber, and Pete Tyler on Plaintiff's notice-of-termination retaliation claim. (Dkt. No. 749). The Court entered a separate judgment awarding Plaintiff $492,806.73 in attorney's fees and $27,620.27 in costs on January 5, 2017. (Dkt. No. 786). The Court also granted Defendants' motion to stay enforcement of the judgments without a bond pending appeal. (Dkt. No. 785, at 13–16; *see* Dkt. No. 768). On December 18, 2018, the Second Circuit affirmed the judgment against the City of Ithaca on Plaintiff's beat-assignment retaliation claim and the award of attorney's fees and costs to Plaintiff, (Dkt. No. 789, at 3, 5, 10), but vacated the jury's finding of liability on Plaintiff's notice-of-termination retaliation claim because of a change of law requiring a jury instruction on but-for causation, (*id.* at 4–5). Accordingly, the case was remanded for a new trial on that claim. (*Id.* at 10). The Second Circuit's mandate issued on January 8, 2019. (Dkt. No. 792).

Although the Second Circuit affirmed and did not disturb the finality of the judgments on the beat-assignment retaliation claim and the award of attorney's fees and costs, Defendants asked this Court to continue to stay enforcement pending retrial of the notice-of-termination retaliation claim. (Dkt. No. 790). The Court denied the request, noting that it was bound by the Second Circuit's mandate, and the stay was lifted on March 7, 2019. (Dkt. Nos. 801, 802). Defendants moved for reconsideration of that denial, (Dkt. No. 803), but again the Court rejected the request to stay, observing that "Defendants have failed to cite authority supporting a stay or authority that would empower a district court to reconsider an attorney's fee award that was litigated on appeal and affirmed by the Second Circuit Court of Appeals," (Dkt. No. 804). Undeterred, Defendant have filed a notice of appeal, (Dkt. No. 805), and moved for a stay of

enforcement of the attorney's fees judgment pending appeal, (Dkt. No. 806). For the reasons that follow, the motion is denied.

## II. LEGAL STANDARD

At the outset, the Court notes that Defendants appear uncertain about the basis for their stay request. They invoke Rule 8(a) of the Federal Rules of Appellate Procedure in their notice of motion, (Dkt. No. 806, at 1), yet rely on Rule 62(h) of the Federal Rules of Civil Procedure in their supporting brief, (Dkt. No. 811, at 1–2). Technically, neither is applicable, as the Federal Rules of Appellate Procedure "govern procedure in the United States courts of appeals," Fed. R. App. P. 1(a)(1), not this Court, and Rule 62(h) concerns stays of "enforcement of a final judgement entered under Rule 54(b)," which did not occur here.[2] Nevertheless, as Judge Sharpe explained in an earlier decision in this case, "[w]hile Rule 62 outlines the mechanism for how a stay may be obtained while an appeal is pending, it does not limit the district court's inherent power to issue a stay in a manner that does not fall within the scope of the Rule." *Miller v. City of Ithaca*, No. 10-cv-597, 2017 WL 61947, at *4, 2017 U.S. Dist. LEXIS 1310, at *12 (N.D.N.Y. Jan. 5, 2017), ECF No. 785; *accord Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, No. 17-cv-1266, 2019 WL 181308, at *4, 2019 U.S. Dist. LEXIS 5416, at *10–11 (S.D.N.Y. Jan. 11, 2019) ("It is well-settled that a district court has discretionary power to stay proceedings pursuant to its inherent power to control its docket." (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936))). The Court may therefore consider Defendants' motion under its inherent authority to stay proceedings.

---

[2] The final judgment entered on September 7, 2016 disposed of all remaining claims; it was not a partial final judgment under Rule 54(b). (*See* Dkt. No. 749).

3

A stay is not a matter of right but an exercise of judicial discretion that depends on the circumstances of the particular case. *Nken v. Holder*, 556 U.S. 418, 433 (2009). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. In deciding whether to stay proceedings, courts consider four factors, the first two of which "are the most critical": "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *accord In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

## III. DISCUSSION

Defendants have not briefed the first factor—likelihood of success on the merits—but they apparently believe that the Second Circuit may "award them relief from the attorneys' fees judgment under Rule 60 because . . . the fees were awarded before one of the verdicts that supported the fee award was vacated." (Dkt. No. 811, at 3). Even assuming that an appeal properly lies from a refusal to continue the stay, Defendants have failed to establish a likelihood of success on appeal. The Second Circuit has already reviewed and affirmed the award of attorney's fees, even while it remanded one claim for retrial. If the Court of Appeals had intended its partial vacatur and remand to disturb the award of attorney's fees, it would have said so. It did not, and this Court cannot revisit the issue given the clear terms of the mandate. *See United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) ("The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or

4

impliedly decided by the appellate court." (internal quotation marks omitted)).[3] The first factor thus weighs heavily against Defendants.

The Court turns next to the second factor—irreparable harm. According to Defendants, "[i]f the Plaintiff is able to execute prematurely on the current attorneys' fee judgment, any offset or reduction of the current fee judgment will be difficult or impossible to recoup." (Dkt. No. 811, at 3). That proposition assumes that the fee award is not final and can be reduced—a mistaken notion that the Court has already rejected. Moreover, Defendants do not explain why it would be "difficult or impossible to recoup" money paid to Plaintiff. There is no fact before the Court indicating, for example, that Plaintiff will not be able to pay Defendants if they are later awarded fees. *Cf. Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) ("Normally the mere payment of money is not considered irreparable, but that is because money can usually be recovered from the person to whom it is paid. If expenditures cannot be recouped, the resulting loss may be irreparable. Here . . . a substantial portion of the fund established by their payment will be irrevocably expended."). As Plaintiff correctly points out, (*see* Dkt. No. 812, at 6–8), the cases on which Defendants rely for their "offset" argument, (*see* Dkt. No. 811, at 2–4), are factually and legally distinguishable and do not involve an award of attorney's fees that has been

---

[3] Even if the Second Circuit were to accept another appeal—despite Defendants' failure to petition for a panel rehearing under Federal Rule of Appellate Procedure 40 or request a recall of the mandate—it is highly unlikely that a panel would modify the mandate and revisit the award of attorney's fees previously affirmed. Defendants' contend that, "[i]f the Plaintiff loses at trial, the Court may determine that the half-million dollars in attorneys' fees awarded by Judge Sharpe when Plaintiff was a $280,000 verdict winner should be reduced if he ends the litigation as a $20,000 verdict winner." (Dkt. No. 811, at 3). But a party's degree of success cannot be reduced to the amount of damages obtained. *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (noting that "calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes"). And Judge Sharpe did not premise his fee award on the damages amount. Instead, he observed that "the success ultimately obtained cannot fairly be categorized as limited, and the claims all stem from [a] series of related facts." (Dkt. No. 785, at 9–10). He then calculated Plaintiff's counsel's fees using the lodestar method with "a percentage reduction" to arrive at a reasonable number of billing hours. (*Id.* at 11–12). Contrary to Defendants' suggestion, Plaintiff has already obtained significant success in the litigation so far, regardless of what outcome Plaintiff achieves on retrial of the notice-of-termination claim.

affirmed on appeal.[4] The Court, therefore, is not convinced that Defendants will be irreparably harmed absent a stay.

Defendants do not address the third factor—the harm that Plaintiff would suffer if a stay is granted. This litigation has been ongoing for nine years, and the final judgments in this case were entered more than two and a half years ago. The Court agrees with Plaintiff that withholding an award of fees and costs that has been affirmed on appeal would be "grossly unfair and inequitable to Plaintiff." (Dkt. No. 812). According, the Court finds that the third factor weighs against staying enforcement of the judgments.

Finally, the Court must consider the fourth factor—the public interest. Defendants maintain that the "judgment is against the City of Ithaca, not a private entity, and thus the judgment, if executed, will ultimately be paid by Ithaca's taxpayers." (Dkt. No. 811, at 2). But this is true in any case in which a municipality is a losing defendant, and Congress has seen fit "to impose direct liability for damages against municipalities as employers for violation of the law against employment discrimination." *Monell v. Dep't of Soc. Servs.*, 532 F.2d 259, 267 (2d Cir. 1976), *rev'd on other grounds*, 436 U.S. 658 (1978). As Judge Sharpe previously noted in this case, while "the citizens of the City of Ithaca may be deprived of some 'public functions'" because of the fiscal burden of paying money judgments, there is also a "public interest in the satisfaction of judgments for violations of labor and employment laws." *Miller*, 2017 WL 61947, at *5, 2017 U.S. Dist. LEXIS 1310, at *14; *see also Nken*, 556 U.S. at 427 ("The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders that the legislature has made final."). Considering the

---

[4] Similarly, the Court agrees with Plaintiff that Defendants' cited cases do not support staying an award of attorney's fees because of the City of Ithaca's status as a municipality. (*See* Dkt. No. 812, at 7).

importance of finality and the need to effect the remedial purposes of antidiscrimination laws, the Court finds that the public interest leans in favor of denying a stay.

In conclusion, because all four factors tip against a stay, Defendants' motion is denied. Plaintiff may proceed to enforce the judgments.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for stay pending appeal and expedited review (Dkt. No. 806) is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 3, 2019
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge