# BOSMAN LAW L.L.C.

3000 McConnellsville Road
Blossvale, New York 13308

A.J. Bosman, Esq.  
T. Padric Moore, Esq., of Counsel

Telephone: (315) 820-4417  
Facsimile:  (315) 820-4449 (*)  
(*) Service by facsimile or e-mail not accepted.

February 3, 2020

Hon. Brenda K. Sannes  
U.S. District Judge  
United States District Court  
Northern District of New York  
100 South Clinton Street  
Syracuse, New York 13261

      RE:    **Miller v. City of Ithaca, et al.**  
              **3:10-CV-597 (BKS/ML)**

Dear Judge Sannes:

Please accept this letter as Plaintiff's reply to "Defendants' Supplemental Motions in Limine and Other Pretrial Submissions," dated January 30, 2020, and response to Defendants' "Supplemental Motion in Limine to Preclude Admission of Plaintiff's NYSDHR Charges into Evidence" and Motion to Quash the Subpoena served on Dr. Lynch.

**1. Plaintiff's reply to "Defendants' Supplemental Motions in Limine and Other Pretrial Submissions," dated January 30, 2020**

      *A. The Circuit's Mandate does not preclude a 42 U.S.C. § 1981 retaliation claim in the up-coming retrial.*

The Circuit's Summary Order states: "Miller [was not] entitled to have the jury instructed on his § 1981 claim because he did not make a sufficient showing of personal involvement of the individual defendants or a municipal policy or custom of the City."  758 Fed. Appx. 101, 105 (2d Cir. 2018) (internal quotations and citation omitted).

The Circuit did not rule that Plaintiff's evidence of retaliation was insufficient to meet the "but-for" standard, merely that the Nassar case required a different instruction. The Circuit's Mandate does not foreclose curing the insufficiency at the up-coming retrial for purposes of showing personal involvement.  Matters left open by the Mandate are not precluded from reconsideration by the district court upon remand.  The court is required to "look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'"  United States

v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001) (quoting United States v. Kikumura, 947 F.2d 72, 76 (2d Cir. 1991)).

The Circuit's Mandate vacates the retaliation claims involving the issuance of the June 1, 2010 Notice of Discipline and remands them for retrial. The only retaliation claim specifically referenced by the Circuit is Title VII but Defendants agree that Plaintiff also has an active claim under the New York State Human Rights (DHR). Thus, Plaintiff submits that this trial may also properly include a retaliation claim under 1981. To establish such a claim, Plaintiff will, as he has in the past, make a showing of "personal involvement" of the individual Defendants (Vallely, Barber and Tyler). Title VII, HRL, and 42 U.S.C. § 1981 all have the same "but-for" causation standard. Thus, it is in the "spirit" of the Mandate that a 1981 claim be allowed to be considered by the jury.

*B. Evidence of Disparate Treatment is relevant to prove retaliation. Plaintiff should not be precluded from introducing such evidence.*

Defendants simultaneously complain that the evidence of disparate treatment of other officers is unsupported yet there is extensive testimony concerning complaints of reported drug related misconduct of Byrd that was never investigated. This is in contrast to the Defendants' treatment of Plaintiff and also related to the false testimony of Barber and Vallely concerning their knowledge about those misconduct allegations. Counsel's representation that the matters were "investigated" by the FBI and Attorney General is utter hearsay. There is no report that "cleared" Byrd. More importantly, there is no investigation as to Barber and Vallely's knowledge of the reported misconduct. Their vigor in the investigation and discipline of Plaintiff is an evidentiary contrast important for the jury to consider.

Barksdale's confrontation with the Plaintiff over his Human Rights complaints (screaming at him in the parking lot and calling him filthy, a pig, and a racist) was reported to Human Resources, never fully investigated and Barksdale was not disciplined or admonished for her attack on Plaintiff. This event and his complaints about her treatment of him came immediately prior to the NOD regarding a DWI log, falsely orchestrated by Tyler.

*C. The arbitrator's "findings" are inadmissible and unduly prejudicial to Plaintiff.*

For the reasons stated in Plaintiff's January 30, 2020 letter and in prior submissions to this court, the arbitrator's "findings" are inadmissible and unduly prejudicial to Plaintiff. They should not be allowed to be used for "impeachment" or otherwise. A reading of the hearsay testimony presented to the arbitrator and his assessment of credibility makes the prejudicial effect immediately apparent. Additionally, there is reference to Plaintiff's federal trial and complaint throughout the transcript. The casting of Plaintiff as a "liar" is exactly what Defendants seek to bolster by the extraneous and unnecessary remarks of Maroney making

-2-

credibility determinations. Furthermore, it is patently improper for an arbitrator or anyone else but a judge or jury to convict someone or declare they committed a crime or perjury, let alone declare such to a jury in a civil matter.

    *D. Plaintiff is irreparably prejudiced by the absence of notice of the Reed Brook and Walmart Subpoenas.*

  Defendants continually seek to vilify Plaintiff to distract from their unlawful retaliatory conduct. The reasons for Plaintiff's separation from employment with Walmart, years after his termination from IPD, is relevant only in that the manager was engaged to a NYS trooper who she claimed was friends with Tyler and Barber, knew all about what happened at Ithaca and threatened Plaintiff with his job. She was fired. Defendants provided incomplete records obtained by secret Subpoena not provided to Plaintiff's counsel to Dr. Gold who relied on them in her report yet never asked Plaintiff a single question about them so as not to alert him to the records. Had Plaintiff's counsel been provided prior notice, an objection would have been made. Nor has defense counsel acknowledged yet another "secret" subpoena to Reed Brook or any response thereto to Plaintiff's counsel. Defendants' failure to provide notice prejudices Plaintiff because there is no opportunity to "un-ring" the bell. The records have already been disclosed, forwarded to Dr. Gold, and used by her.

    *E. "Proposed Stipulations"*

  The timing and circumstances surrounding the drafting and service of the NOD is in contention. Even though Plaintiff does not have a claim of retaliation regarding the filing of the lawsuit, there is serious question as to when and how two differently dated NOD's came about. We are unable to stipulate that Defendants were unaware of the lawsuit (publicly filed) prior to preparing the NOD.

  Plaintiff is unable to stipulate to the disputed circumstances surrounding his employment in Vinton as set forth by Defendants because it is hearsay without exception and Plaintiff contends the statements as represented by Defendants are untrue. Plaintiff will testify as to the dates of his employment at Vinton.

    *F. Proposed Jury Charge Regarding Arbitration Process*

  Defendants are seeking to place a judicial stamp on a collective bargaining proceeding that Plaintiff had no ability to appeal or challenge, only the Union did. The "process" as represented by Defendants will only confuse and mislead the jury and is irrelevant to the factual issues before them. Plaintiff stipulates that he was terminated by Defendants.

    *G. Blogs and Craigslist Postings*

A cursory review of this submission by Defendants reveals no foundation that proves in any way these postings were made by the Plaintiff. The range of dates also reveals that the Defendants could not have been motivated by 2012 postings in 2010. Defendants can identify any particular "postings" that they were "concerned" over but should not be permitted to suggest to the jury that they were authored by the Plaintiff because they were not.

### 2. Plaintiff's reply to Defendants' "Supplemental Motion in Limine to Preclude Admission of Plaintiff's NYSDHR Charges into Evidence"

The charges of discrimination are relevant and admissible. The charges of discrimination are directly relevant to proving motive and intent to retaliate. It is the content of those charges, which Defendants apparently perceive and here again characterize as "extremely scandalous," "offensive," "inflammatory," "false" and "based entirely on disproven hearsay," that supplies evidence of the motive to retaliate against Plaintiff. It is not merely the fact that complaints were filed but the contents of those discrimination complaints that Defendants sought to punish Plaintiff for.

Defendants now seek to maintain a tactical advantage by not mounting a formal legal challenge to Plaintiff's "good faith" but through argument of counsel and witness testimony, challenge Plaintiff's complaints as false and based on "lies." It is clear that Defendants are not really "stipulating" to anything.

With respect to Defendants' hearsay objection, hearsay evidence is admissible for purposes other than to prove the truth of the matter asserted. As the Second Circuit has noted, "'[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.'" United States v. Dupree, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed. R. Evid. 801(c) advisory committee's note).

Hearsay statements that are not offered to prove the truth of the matter asserted but for other purposes, including the "effect on listener," are not considered hearsay and are properly admitted. See United States v. Signore, No. 16-11344, No. 16-11425, 2019 U.S. App. LEXIS 18753, at *17 (11th Cir. Jun. 24, 2019) ("The evidence was not hearsay because it was introduced to show that Signore made the statement in his email to Schumack, not that Tenet Hospitals actually ordered 4,000 VCMs."); United States v. Lambinus, 747 F.2d 592, 597-98 (10th Cir. 1984) (statements that are offered not for their truth but "for their effect on the listener" are properly admitted for their "non-hearsay use"); O'Grady v. Commonwealth Edison Co., No. 09 C 2539, 2010 U.S. Dist. LEXIS 112065, at **4-5 (N.D. Ill. Oct. 19, 2010) ("if defendant uses the records to prove the effect they had on Douglas' review, not plaintiff's poor performance, they are not hearsay.") (internal citations omitted); see also United States v. Dupree, at 137 (citing George v. Celotex Corp., 914 F.2d 26, 30 (2d Cir. 1990) and United States v. Ansaldi, 372 F.3d 118, 130 (2d Cir. 2004) ("a statement is not hearsay where, as here, it is offered, not for its truth,

but to show that a listener was put on notice.")).

Defendants assert that admitting the DHR complaints will expand this trial, believing that they are authorized to "disprove" the allegations contained in the complaints. Defendants are neither expected nor entitled to "expand" the trial in this manner. It is unlawful to retaliate against Plaintiff for filing his DHR complaints regardless of their validity. Defendant Valley himself accused plaintiff of being racist and sexist based upon his Human Rights complaints. To the extent Defendants are concerned with prejudice in not refuting the allegations in the charges, the court may give the jury a limiting instruction that the allegations in the DHR and Defendants' response thereto are admitted not for their truth but to show their "effect" on Defendants.

### 3. Plaintiff's reply to Motion to Quash the Subpoena served on Dr. Lynch.

With respect to Defense counsel's argument that the Subpoena issued to Dr. Lynch imposes an undue burden, this is the first time we have been advised of a medical reason for Dr. Lynch's unavailability. He has not called my office even though the cover letter served with the Subpoena asks that he do so. As the court will recall, Defense counsel reported that they needed a new expert as they could not get in touch with Dr. Lynch and he had retired. Calls to his office revealed that Dr. Lynch has continued to practice part time and sees patients on "Mondays and Thursdays, 9:30 to 1:30". Since he has not communicated with us, we are unable to determine what, if any, accommodations could be extended to him.

Dr. Lynch's testimony may be needed, not as an expert, but as a rebuttal or fact witness. Dr. Gold considered Dr. Lynch's report and testimony which misrepresent Plaintiff's conduct during his Rule 35 examination and was provided selective information by Defendants. As revealed by audio recordings, Dr. Lynch falsely testified that Plaintiff's interactions were *inter alia*, hostile and threatening towards him. Plaintiff should be allowed to show that Dr. Gold's report is flawed as based on false information from Dr. Lynch.

Finally, Defense counsel gratuitously includes reference to my use of an exhibit at a previous trial as somehow subversive of Judge Sharpe's rulings. Counsel or the court may not recall that I was suffering from an ear infection at that trial. As may be seen by the attached transcript, the referenced exhibit, renumbered and copied from the first trial was a simple error. I reject the implication and defense counsel's continuous *ad hominem* attacks and insinuations seeking to discredit me before this court.

Respectfully,

s/A.J. Bosman
A.J. Bosman

cc:   All CM/ECF recipients

J. Miller - Direct

1  A    In '99?  I'm tryin' to think.
2  Q    Let me try this.  Are you a little nervous,
3  Mrs. Miller?
4  A    I am.
5  Q    Okay.  Now, when ya moved back to Ithaca, Mr. -- your
6  husband took a Civil Service exam and he was hired by the
7  Ithaca Police Department, correct?
8  A    He was.
9  Q    And had he ever worked as a police officer before?
10 A    He has.
11          MR. WAGNER:  Your Honor, I'm gonna object again.
12 This is totally irrelevant to the issues in this case.  We
13 went over this.
14          THE COURT:  I'll allow that question.
15          MR. WAGNER:  Okay.
16 A    What was the question?
17 Q    Now I lost it.  I'm having trouble hearing out of this
18 ear.  Sorry, I'll start again.  After you moved to Ithaca,
19 your husband was employed by the Ithaca Police Department,
20 correct?
21 A    He was.
22 Q    As a police officer?
23 A    He was.
24 Q    And he was on probation for 12 months, correct?
25 A    He was.

Brotherton - Direct

were from three years later, dealing directly with an issue we brought up in a motion in limine, that he specifically ordered on the record to be excluded, that being the Debria Beverly allegations of drug involvement.  They're attached, she continued to try to get 'em in and I believe the original exhibit that was then tendered to the clerk still has those attached to them despite the fact your Honor didn't let them in.  This, I believe, is a backdoor way to try to get this in front of the jury and it's absolutely improper.  We have been doin' this case for five years.  She knew exactly what those notes were and was tryin' to slip 'em passed the goalie, and I'm absolutely furious about it.

THE COURT:  You want to respond?

MS. BOSMAN:  Absolutely not, your Honor.  I did not attach them or try to get them passed.  Those were -- that's the same exhibit, as I understand it, that was presented at the first trial.  What we did is we took the exhibits that we presented and offered at the first trial, we duplicated 'em and then we renumbered 'em at your request.  I couldn't even read the notes when I was questioning the witness and I was surprised to see them attached myself and I did not offer them, nor was he trying to slip them by.

And while we're talking about Debria Beverly, however, because Mr. Wagner has insisted on this issue with

Brotherton - Direct

1  respect to my client's disciplinary history, Mr. Byrd's
2  involvement and the allegations against him and the lack of
3  investigation that they did with respect to those
4  allegations now become relevant, because they're saying that
5  Mr. Miller did all these terrible things, he had all these
6  investigations, but yet they have a complaint which was at
7  Mr. Byrd's detriment as well, I agree, but, nonetheless,
8  they did nothing to investigate those things.  I did not
9  even know that those notes made reference to anything -- I
10 don't even know what they say.
11            THE COURT:  Are you talking about the testimony
12 of --
13            MS. BOSMAN:  Pardon?
14            THE COURT:  Are you talking about the testimony
15 concerning the DWI arrest?  What are you talking about?
16            MS. BOSMAN:  Yeah, the exhibit that Mr. Wagner is
17 grandstanding about, which is ridiculous.  I'm not trying to
18 slip anything by, and I never offered the notes, once I
19 realized they were not relevant --
20            THE COURT:  You're talking about the testimony
21 relative to the DWI stop --
22            MS. BOSMAN:  Yes.
23            THE COURT:  -- and Mr. Byrd's intervention in
24 that?
25            MS. BOSMAN:  Yes.

THERESA J. CASAL, RPR, CRR
UNITED STATES DISTRICT COURT - NDNY